984 F.2d 1486
 John E. RUST, Plaintiff-Appellant,
v.
Frances X. HOPKINS,* Warden Nebraska State
Penitentiary, Defendant-Appellee.
John E. RUST, Plaintiff-Appellee,
v.
Frances X. HOPKINS, Warden, Nebraska State Penitentiary,
Defendant-Appellant.
John E. RUST, Plaintiff-Appellant,
v.
Frances X. HOPKINS, Warden, Nebraska State Penitentiary,
Defendant-Appellee.
 Nos. 91-2453, 92-2680 and 92-3195.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1992.
Decided Jan. 20, 1993.
 
 J. Kirk Brown, Asst. Atty. Gen., Lincoln, NE, for Hopkins.
 Emil M. Fabian, Omaha, NE, argued (Barbara Thielen, on the brief), for Rust.
 Before JOHN R. GIBSON, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Frances X. Hopkins, Warden of the Nebraska State Penitentiary, appeals from a district court[1] order granting a writ of habeas corpus and ordering resentencing of John E. Rust, who had been convicted of murder and sentenced to death. The district court granted the writ on two bases: First, the Nebraska Supreme Court denied Rust due process of law by finding on appeal that the aggravating factors were proven beyond a reasonable doubt, even though the sentencing panel had applied a lower standard of proof; second, Rust's trial counsel rendered ineffective assistance by failing to consult with Rust before sentencing and by failing to clarify the facts surrounding the killing when arguing before the sentencing panel. Hopkins argues that the first issue was not fairly presented to Nebraska courts, and thus, is procedurally barred. Hopkins also argues that even if the issue is not procedurally barred, Rust was not denied due process, because the Nebraska Supreme Court found adequate evidence to support the sentence of death beyond a reasonable doubt. As to the second issue, the warden argues that the district court erred in finding ineffective assistance of counsel and prejudice. Rust cross appeals, arguing that the district court erred in failing to grant the writ on several other grounds. We affirm the issuance of the writ.
 
 
 2
 Rust was charged with shooting and killing civilian Michael Kellogg, who had chased and shot at Rust after Rust had participated in an armed robbery. Rust returned fire and shot Kellogg three times. A police officer observed part, but not all, of the incident. At trial, the officer testified that he did not see the first shot, but did see Kellogg shot again "when he first started to fall," and "as he went down." The officer responded to the leading question, "As he was down?" by saying "Yes, sir."
 
 
 3
 Rust was convicted of Kellogg's murder, and a sentencing panel of three state district judges was convened to determine whether the death penalty was warranted. See Neb.Rev.Stat. § 29-2520 (1975). At the sentencing hearing, the prosecutor argued that the death penalty should be imposed and described the officer's trial testimony: "[Officer Wolf] saw Mr. Kellogg falling to the ground, at which time John Rust fired two more shots into his body and Michael Kellogg fell over dead." Rust's trial counsel strenuously argued the presence of mitigating factors, and described the killing:
 
 
 4
 We don't have John Rust going into somebody's house and cold-bloodedly killing them; and cold-bloodedly raping them.
 
 
 5
 Mr. Kellogg introduced himself into the situation.
 
 
 6
 ... at no request from anyone....
 
 
 7
 He came around the corner with his gun blazing ...
 
 
 8
 So, we got Mr. Rust standing in the back yard with somebody shooting at him.
 
 
 9
 Rust's counsel, however, then said, "I don't think that all is relevant today."
 
 
 10
 The sentencing panel considered the statutory aggravating factors[2] and found that four existed: (a) Rust had been convicted of earlier crimes involving the use or threat of violence; (b) Rust murdered Kellogg to conceal the commission of crimes and his identity; (f) Rust knowingly created a great risk of death to at least several persons, and this factor existed to a great degree; and (h) Rust murdered Kellogg to disrupt and hinder the lawful exercise of a governmental function or the enforcement of the laws. Although the sentencing panel concluded that aggravating circumstance (d) did not exist, it observed that "[i]nstead of continuing with his escape, [Rust] ... deliberately fired two more shots at Kellogg while he was wounded and lying on the ground." The panel then considered all the mitigating circumstances,[3] and concluded that Rust committed the crime while he was under the influence of extreme mental or emotional disturbance. The panel weighed the aggravating and mitigating circumstances and concluded that a sentence of death was warranted. Rejecting Rust's constitutional objections, the panel entered a judgment of guilt and a sentence of death.
 
 
 11
 On direct appeal, the Nebraska Supreme Court affirmed Rust's conviction and death sentence. State v. Rust, 197 Neb. 528, 250 N.W.2d 867, cert. denied, 434 U.S. 912, 98 S.Ct. 313, 54 L.Ed.2d 198 (1977). The Nebraska Supreme Court set out the facts of the case and stated that Rust "was observed to be shooting into Kellogg's body after Kellogg had fallen as a result of an earlier shot fired by Rust." Id. at 871. The court then discussed each of the factors in detail. Id. at 872-76. On the same day it decided Rust, the court also decided State v. Simants, 197 Neb. 549, 250 N.W.2d 881, cert. denied, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977), which held for the first time that aggravating circumstances must be proven beyond a reasonable doubt. Rust, 197 Neb. 528, 250 N.W.2d at 876. The court affirmed Rust's death sentence, concluding that its review of the evidence indicated that each circumstance in Rust's case had been proven beyond a reasonable doubt as Simants required. Id.
 
 
 12
 Rust moved for rehearing, arguing that the sentencing panel probably applied the standard from Grandsinger v. State, 161 Neb. 419, 73 N.W.2d 632 (1955), cert. denied, 352 U.S. 880, 77 S.Ct. 104, 1 L.Ed.2d 81 (1956), which did not require proof of aggravating circumstances beyond a reasonable doubt. Rust argued that the interests of justice and due process required that his sentence be vacated and the case be remanded for resentencing in light of the new Simants standard. The Nebraska Supreme Court summarily denied the motion for rehearing without opinion.
 
 
 13
 Rust then challenged his conviction and sentence under the Nebraska Post Conviction Act, Neb.Rev.Stat. §§ 29-3001 to -3004 (1985). One of his claims alleged ineffective assistance of counsel, but all claims were denied, and the Nebraska Supreme Court affirmed the denial. State v. Rust, 208 Neb. 320, 303 N.W.2d 490, cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). Rust then brought an action in the federal district court, but because certain claims had not been exhausted at the state level, he was required to again seek post-conviction relief. See State v. Rust, 223 Neb. 150, 388 N.W.2d 483, 488 (1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1987, 95 L.Ed.2d 826 (1987). His post-conviction relief request was again denied, and the Nebraska Supreme Court affirmed. Id.
 
 
 14
 Rust unsuccessfully sought state habeas corpus relief in Rust v. Gunter, 228 Neb. 141, 421 N.W.2d 458 (1988), and then filed this habeas corpus action with the district court under 28 U.S.C. § 2254 (1988). The case was referred to a magistrate judge[4] for a report and recommendation. The magistrate judge found that the sentencing panel applied the wrong standard, the Nebraska Supreme Court could not cure this error, and the factfinding process did not support a harmless error analysis. The magistrate judge recommended abstention as to the remainder of the errors Rust alleged.
 
 
 15
 The district court adopted the magistrate judge's findings and recommendations and ordered that Rust's sentence be reduced to life imprisonment unless the State initiated capital resentencing proceedings within sixty days from the date the judgment was entered. The district judge abstained from considering the remaining issues. The warden appealed from this order, and the case was briefed and argued before this panel. We remanded for consideration of the remaining issues, and because of the length of time the case had been pending, we requested that the district court decide those issues within ninety days.[5] Rust v. Clarke, 960 F.2d 72, 73-74 (8th Cir.1992).
 
 
 16
 The district court then entered an additional order, granting habeas relief on Rust's ineffective assistance of counsel claims relating to the sentencing phase of his trial. The district court thoroughly examined Rust's ineffective assistance of counsel claims and concluded that counsel had failed to adequately discuss with Rust the strategy and evidentiary and procedural aspects of the sentencing hearings, and failed to argue the facts surrounding the killing to the sentencing panel. The district court found that this failure gave the panel and the Nebraska Supreme Court the erroneous impression that Rust stood over Kellogg and shot him twice while he lay helpless on the ground. Accordingly, the district court entered judgment in favor of Rust, ordering that his sentence be reduced to life imprisonment unless the State initiated capital resentencing proceedings within sixty days after the judgment became final. The district court also considered and rejected other claims for relief, including ineffective assistance of counsel claims regarding Rust's conviction. We discuss these claims in part IV of this opinion.
 
 I.
 
 17
 Before considering Rust's standard of proof claim, we must determine whether the district court erred in holding that this issue was fairly presented to the state courts. The warden argues that the claim was not fairly presented and therefore we must determine whether there was cause for failure to raise the issue, and prejudice from the state court's failure to address the merits of the claim.
 
 
 18
 In Laws v. Armontrout, 834 F.2d 1401 (8th Cir.1987), aff'd on reh'g, 863 F.2d 1377 (8th Cir.1988) (en banc), cert. denied, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989), we explained that to fairly present an issue:
 
 
 19
 [A] petitioner need give only the substance of his claim to the state courts. But to do so, the petitioner must include the same facts and legal theories to the state court that he seeks to present to the federal court so that the state court can apply the controlling legal principles to the facts bearing upon his federal constitutional claim. ... To reiterate, "the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." ...
 
 
 20
 Id. at 1412 (citations omitted).
 
 
 21
 The warden argues that Rust failed to present the standard of proof issue in the Nebraska courts: specifically, that Rust did not raise the reasonable doubt issue before the trial court, include it in his assignments of error, or brief it on direct appeal. However, Rust's first opportunity to raise the issue was in his motion for rehearing after the Nebraska Supreme Court's decision on direct appeal.
 
 
 22
 The critical question is whether Rust fairly presented the issue in that motion. The motion for rehearing, which the Nebraska Supreme Court summarily denied, argued that "the interest of justice and due process require that the sentence ... be vacated and remanded for resentence in conformity with the opinion of this court that the aggravating circumstances must be found beyond a reasonable doubt." The motion then specifically referred to the action of the Nebraska Supreme Court in Simants, overruling Grandsinger, 73 N.W.2d at 632, and holding that "the facts upon which the aggravating circumstances are based [must] be proved beyond a reasonable doubt." Magistrate's Findings of Feb. 14, 1990, at 37. The supporting brief continued:
 
 
 23
 It is very probable that the trial court found the aggravating circumstances using the rule in Grandsinger which this Court has expressly overruled as not applicable to our present law. Since the trial court or panel is the trier of facts as to the aggravating circumstances, this Court has no way of knowing whether the trial court found these circumstances beyond a reasonable doubt and must vacate and remand for a proper sentencing determination.
 
 
 24
 Id.
 
 
 25
 This language from the motion for rehearing and brief before the Nebraska Supreme Court squarely presented the facts on which Rust's argument is based. These facts are: (1) the adoption in Simants of a beyond a reasonable doubt standard, and (2) the application of this new standard in Rust. In addition, the Nebraska Supreme Court knew the only other material circumstance; namely, that Simants and Rust were decided the same day, and thus the rule announced in Simants and incorporated in Rust was unknown to Rust until that day. The motion for rehearing was Rust's first opportunity to raise the issue of the new standard of proof.
 
 
 26
 Under Laws, the next inquiry is whether the legal theory relating to this issue was fairly presented. 834 F.2d at 1412. Rust's rehearing motion raised a due process argument and amplified it by pointing out that the sentencing panel probably employed the old standard of proof from Grandsinger, which Simants overruled. Rust argued that because the panel was the factfinder, the Nebraska Supreme Court would have no way of knowing whether the panel found these circumstances beyond a reasonable doubt. These statements taken together contain the essence of Rust's due process argument. As the magistrate judge observed, the Nebraska Supreme Court had before it every legal and factual component of the argument:
 
 
 27
 [A] claimed due process violation arising out of a lack of direction to the sentencing panel because of the silence of the statute and the existence of Grandsinger, the specification of the standard for the first time on appeal, and the application of that standard to the evidence in the case for the first time on appeal.
 
 
 28
 Magistrate's Findings of Feb. 14, 1990, at 38.
 
 
 29
 The magistrate judge concluded that while Rust's claim was not identical to that considered in Simants and Rust, or to that in Rust's motion for reconsideration and brief to the Nebraska Supreme Court, "the issues are sufficiently close both legally and factually so that it may be confidently said that the Nebraska Supreme Court was fairly presented with the issue now presented here."
 
 
 30
 The warden responds that the brief references in the motion for rehearing and brief did not fairly present the issue because they cited no specific constitutional provision or any federal cases, and because the Nebraska Supreme Court in Simants decided the issue not as a federal constitutional issue, but on state law grounds. These arguments are unpersuasive. In Simants, the Nebraska Supreme Court considered the Nebraska death penalty statutes under both the federal and state constitutions. 250 N.W.2d at 885, 888, 894. In its constitutional analyses, Simants cites only decisions of the United States Supreme Court. Id. The Nebraska Supreme Court in Rust refers to Simants' holding "in response to a constitutional challenge." Rust, 250 N.W.2d at 876.
 
 
 31
 Similarly, the specific references in Rust's motion for rehearing and supporting brief were more than sufficient to fairly present the standard of proof issue to the Nebraska courts. The motion specifically referred to the following: due process, the overruling of the Grandsinger standard, the inability to know whether the sentencing panel found the aggravating circumstances beyond a reasonable doubt, and the three opinions of the Nebraska Supreme Court issued the same day on which the Simants rule was applied by the appellate court to Rust.
 
 
 32
 The Nebraska Supreme Court denied the motion for rehearing summarily and without comment, with no "plain statement" that the denial was based on an independent state procedural bar. See Harris v. Reed, 489 U.S. 255, 261-62, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). Significantly, in referring to Simants, the Nebraska Supreme Court itself raised the standard of proof issue in Rust's case. See Rust, 250 N.W.2d at 876.
 
 
 33
 As the standard of proof issue was fairly presented, we need not consider cause and prejudice.
 
 II.
 
 34
 Having cleared this threshold, we now review the district court's determination that the proceedings in the Nebraska Supreme Court violated due process. There are two general points at issue here.
 
 
 35
 First, the warden argues that the magistrate judge erred in ruling that our decision in Holtan v. Black, 838 F.2d 984 (8th Cir.1988), is binding precedent. Holtan would require that we affirm the district court in granting habeas relief and require resentencing with ascertainment of aggravating circumstances beyond a reasonable doubt. The warden argues that Holtan does not control because it was based on the State's concession that Holtan should be resentenced, and that the State made no such concession in this case. In Holtan the writ was issued on two grounds: (1) the failure of the sentencing panel to determine that aggravating circumstances had been established beyond a reasonable doubt; and (2) a holding that aggravating circumstance (d) defined in section 29-2521 (the "depravity" circumstance) was unconstitutionally applied. The State appealed only on the depravity issue. We refused to reach this issue as not ripe, stating: "As the State concedes, the sentencing panel's failure to ascertain whether the State had demonstrated aggravating circumstances beyond a reasonable doubt requires this case to be remanded." 838 F.2d at 986. While referring to the concession, Holtan affirmed the district court's judgment requiring remand for resentencing under the beyond a reasonable doubt standard. We think it evident that this was a decision on the merits that is binding on this panel. For us to consider Holtan any other way, would raise issues with respect to arbitrary and capricious procedures which would require, on the one hand, that Holtan be resentenced and on the other that Rust be executed without resentencing under the correct standard.
 
 
 36
 The second issue is whether the proceedings in the Nebraska Supreme Court were essentially an unreviewable resentencing in violation of Rust's constitutional rights or were merely a permissible appellate "cure" of deficiencies in the sentencing panel proceedings. We affirm the rulings of the district court that this was an unconstitutional, unreviewable resentencing.
 
 
 37
 The district court adopted the magistrate judge's findings that the Nebraska Supreme Court had found that the existence of each aggravating factor in Rust's case was proven beyond a reasonable doubt. However, because the Nebraska Supreme Court created the beyond a reasonable doubt requirement on the same day that it made this finding, the district court concluded that the sentencing panel "probably" had not applied the beyond a reasonable doubt standard. The district court, relying on Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), determined that Rust was constitutionally entitled to a "two-tier" sentencing process: an initial sentencing by the sentencing panel and a review of that sentence in the Nebraska Supreme Court. The district court concluded that because the beyond a reasonable doubt standard was applied only on appeal by the Nebraska Supreme Court, Rust was deprived of his state statutory right to be sentenced under the proper standard by a sentencing panel, and to have the Nebraska Supreme Court review that sentence. In effect, the Nebraska Supreme Court acted as an unreviewable sentencing panel when it made its findings that the aggravating factors had been proven beyond a reasonable doubt.
 
 
 38
 The warden argues that the Nebraska Supreme Court simply cured any uncertainty over the standard of proof applied in Rust's case by means of a reweighing or a harmless error analysis as permitted under Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). Clemons is inapplicable and we affirm the district court.
 
 
 39
 Nebraska law requires the sentencing judge or judges to consider both aggravating and mitigating circumstances. Neb.Rev.Stat. § 29-2522 (1973). In construing this section, the Nebraska Supreme Court stated:
 
 
 40
 We believe the obvious intent of the statute is that the enumerated aggravating circumstances should require strong proof. Aggravating circumstances are now a mandatory element to be considered in capital cases. The sentence depends upon the proof of some aggravating circumstance. We believe it is the intent of the Act to require the facts upon which the aggravating circumstances referred to in section 29-2523, R.R.S.1943, are based be proved beyond a reasonable doubt, and so construe it.
 
 
 41
 Simants, 250 N.W.2d at 888. Either the judge who presided at trial or a panel of three judges, usually including the judge who presided at trial, will determine the proper sentence. Neb.Rev.Stat. § 29-2520 (1975). The Nebraska Supreme Court automatically reviews all capital punishment cases. Neb.Rev.Stat. § 29-2525 (1975).
 
 
 42
 Therefore, Rust had a statutory right to: (1) have his trial judge or a three-judge panel including his trial judge consider aggravating circumstances based on facts proven beyond a reasonable doubt and to sentence him based on those findings; and (2) have the determination of that sentencing panel reviewed in the Nebraska Supreme Court. While created by state law, these are not "procedural right[s] of exclusively state concern," they are liberty interests protected by the Fourteenth Amendment. See Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). When Nebraska, without due process, deprived Rust of these rights, it violated rights guaranteed him under the United States Constitution. This violation was two-fold.
 
 
 43
 First, Rust was not sentenced by a panel applying the beyond a reasonable doubt standard for aggravating circumstances. We presume, as did the district court, that the judges on the sentencing panel applied the then current standard as set out in Grandsinger, 73 N.W.2d at 632, because the panel would not have been following applicable law if it did not do so. See Simants, 250 N.W.2d at 888. The proper standard was not applied until the Nebraska Supreme Court reviewed Rust's sentence. However, the Supreme Court has recognized that "when state law creates for a defendant a liberty interest in having a jury make particular findings, speculative appellate findings will not suffice to protect that entitlement for due process purposes." Clemons, 494 U.S. at 746, 110 S.Ct. at 1447. Here, Nebraska created a liberty interest in having a panel of judges make particular findings, specifically, the proper weight to be given aggravating circumstances based on facts proven beyond a reasonable doubt. Rust was deprived of this interest, a deprivation so serious that it cannot be cured by appellate review. The sentencing panel's use of an improper standard contaminated all its findings regarding aggravating circumstances. Rust simply never had the opportunity to be sentenced by a panel as contemplated in the Nebraska statutes.
 
 
 44
 We recognize, of course, that an appellate court is fully competent to "cure" some sentencing deficiencies in capital cases. However, we think such appellate remedies are appropriate when the initial sentencing was tainted by relatively minor errors (such as the improper consideration of an invalid aggravating circumstance). We do not believe that Clemons or any other decision on this issue supports the proposition that an appellate court can provide an adequate "cure" when the entire first tier of the sentencing process was invalid.
 
 
 45
 The second facet of the constitutional violation here is the deprivation of any meaningful appellate review. Even if we assume that the Nebraska Supreme Court could have remedied the invalidity in the sentencing panel's determination by stepping in and "resentencing" Rust under the proper standard, the actions of the Nebraska Supreme Court would still violate due process. The whole point of the two-tier sentencing procedure is that the initial determination is reviewed by an independent appellate court. The two-tier process would be subverted if the Nebraska Supreme Court could step in and fully perform the work of the sentencing panel. Yet that is precisely what happened in this case. The Nebraska Supreme Court did not merely "review" the determinations of the sentencing panel, it effectively resentenced Rust under a standard it had created that very same day. The existence of independent (and often automatic) appellate review has been a crucial factor in the Supreme Court's upholding the constitutionality of state capital punishment schemes. See, e.g., Gregg v. Georgia, 428 U.S. 153, 198, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976); Proffitt, 428 U.S. at 253, 96 S.Ct. at 2967; Godfrey, 446 U.S. at 429, 100 S.Ct. at 1765. Thus, the deprivation of meaningful appellate review is an independent violation of Rust's constitutional rights. The district court correctly interpreted Proffitt and Godfrey on this point, and we affirm its conclusion.
 
 
 46
 Contrary to the warden's arguments, we believe that Clemons does not apply here. We base this conclusion on three factors. First, the Clemons decision addressed the permissibility of a state procedure authorizing an appellate court to reweigh the remaining aggravating and mitigating circumstances examined by the sentencing entity after that appellate court had found one or two of the aggravating circumstances invalid. In Clemons, the Mississippi Supreme Court asserted its authority under state law to affirm a death sentence in this manner. See Clemons, 494 U.S. at 743-44, 110 S.Ct. at 1445-46. This assertion distinguished the Clemons facts from those of Hicks:
 
 
 47
 Contrary to the situation in Hicks, the state court in this case, as it had in others, asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed even though one of the two aggravating circumstances on which the jury had relied should not have been, or was improperly, presented to the jury.... We have no basis for disputing this interpretation of state law, which was considered by the court below to be distinct from its asserted authority to affirm the sentence on the ground of harmless error, and which plainly means that we must reject Clemons' assertion that he had an unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed. In this respect, the case is analogous to Cabana v. Bullock ... where we specifically rejected a due process challenge based on Hicks because state law created no entitlement to have a jury make findings that an appellate court also could make.
 
 
 48
 Clemons, 494 U.S. at 747, 110 S.Ct. at 1447-48 (emphasis added).
 
 
 49
 Therefore, the Clemons petitioner had no state law created entitlement, and furthermore, state law specifically authorized the procedure employed by the appellate court. In contrast, Rust has such an entitlement; namely, a right to be sentenced under the proper standard by the sentencing panel. Therefore, his situation is not analogous to Clemons, but more closely resembles Hicks. When such a state-created liberty interest is taken away in sentencing, the violation is far more serious than that alleged in Clemons when no state law entitlement was jeopardized, and the appellate "cure" was authorized by state law.
 
 
 50
 The second factor supporting our decision is related to the first. Our reading of Clemons and the cases that follow it convince us that the Court is simply authorizing the reweighing of the remaining valid aggravating circumstances, not the replacement of invalid proceedings with corrected proceedings in the appellate court. See Clemons, 494 U.S. at 748-50, 754, 110 S.Ct. at 1448-49, 1451; Sochor v. Florida, --- U.S. ----, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992); Stringer v. Black, --- U.S. ----, ----, 112 S.Ct. 1130, 1136-37, 117 L.Ed.2d 367 (1992); Yates v. Evatt, --- U.S. ----, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991). This is also the interpretation this circuit has given to the Clemons decision. See Moore v. Clarke, 951 F.2d 895, 897 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992). When the sentencing judge or panel has based the death sentence on a number of factors, and one of these factors is later found to be constitutionally invalid, Clemons allows the appellate court to either "reweigh" the remaining valid factors or to perform a harmless error analysis. Clemons, 494 U.S. at 750, 752-54, 110 S.Ct. at 1449, 1450-51. The Court cautioned against the wholesale adoption of even this limited version of appellate remediation:
 
 
 51
 Nothing in this opinion is intended to convey the impression that state appellate courts are required to or necessarily should engage in reweighing or harmless-error analysis when errors have occurred in a capital sentencing proceeding. Our holding is only that such procedures are constitutionally permissible. In some situations, a state appellate court may conclude that peculiarities in a case make appellate reweighing or harmless-error analysis extremely speculative or impossible. We have previously noted that appellate courts may face certain difficulties in determining sentencing questions in the first instance....
 
 
 52
 Id. at 754, 110 S.Ct. at 1451 (citation omitted). Clemons does not authorize an appellate court to "cure" a sentence based entirely on invalid considerations. Here, the use of an improper standard of proof infected all of the sentencing panel's findings--there is no valid remnant to salvage, no untainted factors to be reweighed. What the Nebraska Supreme Court did here is far beyond what was authorized in Clemons; while Clemons envisioned a limited cure, the Nebraska Supreme Court performed major corrective surgery.
 
 
 53
 The third factor is the recognition of an independent constitutional violation in Rust's loss of an opportunity for appellate review. Clemons and its progeny address situations in which the constitutional violations are confined to deficiencies in the sentencing process below. Here, the action of the appellate court in curing these deficiencies by stepping in the shoes of the sentencing panel, creates an additional violation by eliminating the possibility of appeal. This is a complication not addressed in Clemons, and we would ignore it if we adopted the warden's position.
 
 
 54
 Finally, we conclude that even applying Clemons, the Nebraska Supreme Court's action would still be deficient. Under Clemons, an appellate court faced with deficiencies in the first tier of a capital sentencing procedure has two options: it may eliminate the invalid factors considered by the sentencing panel below and reweigh the remaining valid factors, or it may perform harmless error analysis. Clemons, 494 U.S. at 750, 752-54, 110 S.Ct. at 1449, 1450-51. As we have pointed out, reweighing did not occur in this case because there were no valid factors emerging from the sentencing panel. Nor do we believe that the Nebraska Supreme Court performed a proper harmless error analysis. It stated:
 
 
 55
 We are satisfied from our review of the evidence in this case that the facts upon which the finding of the existence of each aggravating factor depends was proved beyond a reasonable doubt and so find. In making such a finding we have applied the same standard of reasonable doubt as applicable to the burden of proof in criminal cases. NJI No. 14.08. See, State v. Rice, 188 Neb. 728, 751, 199 N.W.2d 480; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065.
 
 
 56
 Rust, 250 N.W.2d at 876.
 
 
 57
 Like the Supreme Court in Clemons, we are troubled by this "cryptic holding." Clemons, 494 U.S. at 753-754, 110 S.Ct. at 1451. When a state supreme court found the imposition of the wrong standard of proof by a sentencing panel to be harmless error, we would expect to see the same sort of detailed examination of the evidence that the Supreme Court expected to see in Clemons. Id. Consequently, we cannot conclude that the Nebraska Supreme Court performed a harmless error analysis adequate under the standards of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court's mere citation of Chapman in lieu of a plain statement summarizing its analysis does not suffice. See Sochor, --- U.S. at ----, 112 S.Ct. at 2123. Therefore, even if we applied Clemons, we cannot conclude that the Nebraska Supreme Court had met the standards set out in that opinion.
 
 
 58
 We therefore affirm the judgment of the district court that the proceedings in the Nebraska Supreme Court violated due process and deprived Rust of his constitutional rights created by the Nebraska capital sentencing procedures.
 
 III.
 
 59
 Rust's alternative argument, that he was denied effective assistance of counsel during the sentencing phase of his trial, raises issues that we need not reach at this time. As we have affirmed the granting of the writ on the beyond a reasonable doubt standard issue, further resentencing proceedings will in all likelihood insure that these issues will not recur. Accordingly, we need not analyze these issues in detail.
 
 IV.
 
 60
 In his cross-appeal, Rust asks that we reverse the district court's rulings as to five other claims. First, Rust argues that the district court erred by not granting the writ on over thirty other ineffective assistance of counsel claims. The district court thoroughly examined each claim and found that even assuming ineffective assistance, Rust was not prejudiced. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). We have carefully reviewed each claim, and affirm.
 
 
 61
 Second, Rust argues that the sentencing panel inappropriately considered a juvenile conviction when it had previously sustained an objection, agreeing that it would not be considered. The district court found that the sentencing panel only considered the conviction with regard to an aggravating factor that the panel concluded did not exist, and the panel's consideration of the juvenile conviction did not infect the panel's failure to find that a mitigating circumstance existed because other convictions were admitted and were enough to negate the existence of that mitigating circumstance. We affirm.
 
 
 62
 Third, Rust argues that Neb.Rev.Stat. § 28-401 (Supp.1973) is unconstitutional because a defendant may be charged, convicted, and sentenced to death for a killing committed without premeditation, deliberation, or intent to kill. Relying on Enmund v. Florida, 458 U.S. 782, 792, 798, 102 S.Ct. 3368, 3374, 3377, 73 L.Ed.2d 1140 (1982), and Tison v. Arizona, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), the district court ruled that the statute and its application in this case were constitutional. We agree.
 
 
 63
 Fourth, Rust argues that his jury did not reflect a fair cross-section of the community. Specifically, he finds error with the trial court's dismissal of a prospective juror who had reservations about the death penalty, observed the victim's funeral procession, had been exposed to media coverage, and stated that she might be influenced by what she read and saw. The district court found there was no basis under 28 U.S.C. § 2254(d) for overturning the state trial court's decision. See Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). We agree that it was more to Rust's benefit, than detriment, to have the juror removed, and affirm.
 
 
 64
 Finally, Rust argues that the Nebraska death penalty statutes are vague and overbroad in violation of his Fourteenth Amendment due process and equal protection rights. The district court thoroughly analyzed this claim and held that the statutes are not overbroad or vague, and that the statutes were not applied in an arbitrary and capricious manner. After carefully reviewing the statutes and Rust's arguments, we affirm the district court's findings.
 
 
 65
 We affirm the issuance of the writ, and the district court's rejection of Rust's various other claims.
 
 
 
 *
 Frances X. Hopkins replaced Harold W. Clarke as the defendant-appellee in this action
 
 
 [1]
 The Honorable William G. Cambridge, United States District Judge for the District of Nebraska
 
 
 [2]
 See Neb.Rev.Stat. § 29-2523(1) (1975), identifying the following aggravating circumstances for consideration:
 (a) The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity;
 (b) The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime;
 (c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;
 (d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence;
 (e) At the time the murder was committed, the offender also committed another murder;
 (f) The offender knowingly created a great risk of death to at least several persons;
 (g) The victim was a law enforcement officer or a public servant having custody of the offender or another; or
 (h) The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws.
 
 
 [3]
 Neb.Rev.Stat. § 29-2523(2) (1975) provides for mitigating circumstances:
 (a) The offender has no significant history of prior criminal activity;
 (b) The offender acted under unusual pressures or influences or under the domination of another person;
 (c) The crime was committed while the offender was under the influence of extreme mental or emotional disturbance;
 (d) The age of the defendant at the time of the crime;
 (e) The offender was an accomplice in the crime committed by another person and his participation was relatively minor;
 (f) The victim was a participant in the defendant's conduct or consented to the act; or
 (g) At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication.
 
 
 [4]
 The Honorable Richard G. Kopf, United States Magistrate Judge for the District of Nebraska
 
 
 [5]
 We are concerned by the length of time this case has been pending before the courts--over seventeen years. The robbery and shooting occurred on February 21, 1975. Rust's trial concluded on August 1, 1975, he was sentenced on October 30, 1975, and his conviction was affirmed on direct appeal on February 2, 1977. Rust's post-conviction remedies were denied March 20, 1981. His first federal habeas was dismissed for lack of exhaustion, and Rust again returned to the state courts where his second post-conviction proceeding was denied, and the Nebraska Supreme Court affirmed on June 13, 1986. Rust's petition for writ of habeas corpus in the state courts was denied, and the Nebraska Supreme Court affirmed on April 1, 1988. Thus, twelve years and eight months elapsed between trial and the state court's final denial of relief
 Rust filed this action in the district court on June 9, 1987, an amended petition was filed by stipulation on July 6, 1988, and the court's first order was entered May 13, 1991. We heard argument on March 9, 1992, but because the district court had not disposed of all the issues, we remanded for consideration of the remaining issues, requiring that an order be entered within ninety days. The district court entered its second order on June 18, 1992, and the case was submitted to this panel on October 13, 1992.