_____

Nos. 95-1098/95-1188
_____

Randolph K. Reeves,                    *
                                       *
        Appellee/Appellant,            *
                                       *
    v.                                 *  Appeal from the United States
                                       *  District Court for the
Frank X. Hopkins, Warden of the        *  District of Nebraska.
Nebraska Penal and Correctional        *
Complex,                               *
                                       *
        Appellant/Appellee.            *

_____

Submitted:  September 11, 1995

Filed:  February 8, 1996
_____

Before BOWMAN, BRIGHT, and BEAM, Circuit Judges.
_____

BEAM, Circuit Judge.

    Randolph K. Reeves was convicted of two counts of felony
murder and sentenced to death by the State of Nebraska.  His
convictions and sentences were affirmed by the Nebraska Supreme
Court both on appeal and in postconviction actions.  The United
States Supreme Court vacated the state supreme court's
postconviction decision and remanded for reconsideration in light
of intervening Supreme Court decisions.  On remand, after hearing
argument from both sides, the Nebraska Supreme Court affirmed
Reeves' death sentences.  Reeves then petitioned the federal
district court for a writ of habeas corpus under 28 U.S.C. § 2254.
The district court granted the writ and the state appeals.  We
reverse in part and remand.

## I. BACKGROUND

In the early morning hours of March 29, 1980, Randy Reeves killed Janet Mesner and Victoria Lamm. Reeves, a construction worker idled by a rainy day, had begun drinking the previous day at 8:00 or 9:00 a.m., and continued drinking at various locales until after midnight. At Reeves' last stop, he ingested some peyote buttons, and, according to friends, was in a near stupor when he left to go visit Ms. Mesner, the live-in caretaker of the Quaker meetinghouse. Ms. Mesner and Reeves[1] were distantly related, both of the Quaker faith, and had been good friends all of their lives. They had never had any sort of romantic relationship.

Evidently, Reeves climbed into the meetinghouse through a kitchen window, obtained a kitchen knife, went upstairs and assaulted Ms. Mesner in her bedroom. Ms. Mesner was stabbed seven times. Ms. Lamm, who was visiting with her young daughter, walked in on the struggle and was also stabbed by Reeves. Ms. Lamm's wounds were almost immediately fatal, but Ms. Mesner was able to make her way downstairs to summon help. Police found Ms. Mesner still conscious. She identified her attacker as Reeves, expressing shock and disbelief that he would do such a thing to her and Ms. Lamm.

Police found Ms. Mesner's bedroom in a shambles, indicating a great struggle. There, they discovered Reeves' underwear, sock, and billfold. Soon thereafter, police found Reeves walking across a major thoroughfare, covered with blood, his fly undone and his genitals exposed. Reeves was arrested and given Miranda warnings. He waived his rights and made no attempt to deny his actions. Reeves stated that he was too drunk to remember much, but that he did remember stabbing and raping Ms. Mesner.

------

[1]Reeves is an American Indian who was adopted and raised by a Quaker family.

Reeves' blood alcohol level was .149 when it was tested approximately three hours after the assault. According to trial testimony, Reeves' blood alcohol level may have been as high as .230 at the time of the crimes. There was conflicting testimony as to whether the peyote buttons he ingested would have exaggerated or counteracted the effects of the alcohol, but, either way, there is no doubt that Reeves' capacity to appreciate what he was doing was grossly impaired by his voluntary drug and alcohol abuse on the night of the murders.

At trial, Reeves did not dispute that he committed the crimes. Rather he argued that he was not guilty either because he did not have the ability to form the requisite intent, or, because he was insane at the time of the murders. The jury found Reeves guilty of both counts of felony murder, and a three-judge sentencing panel subsequently imposed the death penalty on each count. On appeal, the Nebraska Supreme Court found that the sentencing panel had improperly applied one aggravating circumstance and had improperly failed to apply one mitigating circumstance in determining Reeves' sentences. State v. Reeves, 344 N.W.2d 433, 447-48 (Neb.) (Reeves I), cert. denied, 469 U.S. 1029 (1984). Nonetheless, the Nebraska Supreme Court affirmed the death sentences. Id. at 449.

Reeves subsequently filed a state postconviction action, which raised arguments as to the propriety of the aggravating circumstances applied by the sentencing panel. The Nebraska Supreme Court found that those concerns had been adequately addressed in Reeves' direct appeal and refused to reconsider them. State v. Reeves, 453 N.W.2d 359, 385-86 (Neb.) (Reeves II), vacated, 498 U.S. 964 (1990). The United States Supreme Court vacated Reeves II and remanded for reconsideration in view of its recent Clemons decision, a case in which the Court outlined the types of appellate reweighing of the factors underlying a death sentence that were constitutionally unobjectionable, state law permitting. Reeves v. Nebraska, 498 U.S. 964 (1990). In response,

the Nebraska Supreme Court, explicitly relying on its own precedent, reexamined and reweighed the aggravating and mitigating circumstances applied in Reeves' sentencings in a manner it deemed permissible under Clemons. State v. Reeves, 476 N.W.2d 829, 835 (Neb. 1991) (Reeves III), cert. denied, 113 S. Ct. 114 (1992). As a result of that reweighing, the Nebraska Supreme Court affirmed Reeves' death sentences.

Reeves then filed a petition for habeas corpus in federal district court. The district court granted the writ as to sentencing, agreeing with Reeves' claim that the Nebraska Supreme Court's reweighing of the aggravating and mitigating factors in his case was not authorized by state law, and therefore violated his right to be sentenced by due process of law. Having found the reweighing unauthorized, the district court did not consider or resolve Reeves' other objections to his death sentences. The district court did consider and deny relief on several trial claims, including Reeves' claim that, considering the state of the evidence, the state trial court's failure to instruct the jurors on any lesser noncapital offense, and thereby give the jury an alternative to capital conviction or acquittal, violated his due process rights.

The State of Nebraska appeals the grant of the writ. Reeves appeals the district court's denial of relief as to his claim that he was entitled to an instruction on at least one lesser noncapital offense.[2]

---

[2]As explained infra, we defer our consideration of this claim until the district court has addressed the other issues properly presented by Reeves.

-4-

## II.  DISCUSSION

### A. Reweighing by the State Supreme Court

The district court's decision to grant the writ rests on two prongs:  1) our decision in Rust v. Hopkins, 984 F.2d 1486 (8th Cir.), cert. denied, 113 S. Ct. 2950 (1993); and 2) the district court's exhaustive independent examination of Nebraska statutory law.  The district court properly concluded that, under Rust (and under Clemons v. Mississippi, 494 U.S. 738 (1990), for that matter), state appellate court reweighing of the factors underlying a death sentence is permissible only if state law allows it. However, the district court erred in dismissing the Nebraska Supreme Court's assertion of authority to reweigh as an incorrect interpretation of Nebraska law.

The Nebraska Supreme Court is the final arbiter of Nebraska law.  Once that court has asserted its authority to reweigh based on its own practice, our only concern is whether the resultant configuration of state law results in a scheme that violates federal constitutional rights.  See Clemons, 494 U.S. at 746-48 (state supreme court's assertion of authority to reweigh, based on its past practice, defeats petitioner's assertion of unqualified state law right to have all factfinding and weighing done by initial sentencer only); see also Hicks v. Oklahoma, 447 U.S. 343 (1980) (due process is violated when state appellate court admits it is without authority to cure a void sentence, but affirms such sentence nonetheless).  In this case, the Nebraska Supreme Court based its assertion of authority on its own past practice and its interpretation of Clemons.  Reeves III, 476 N.W.2d at 835.  By performing an exhaustive review of Nebraska statutory law in an attempt to show the Nebraska Supreme Court the inadequacy of its interpretation of its own authority under its own law, the district court exceeded the bounds of federal court authority.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (it is not the province of

-5-

federal courts to reexamine state court determinations of state law questions).

As far as the federal constitution is concerned, in a weighing jurisdiction,[3] a state appellate court may cure a constitutional deficiency arising from improper applications or limitations of aggravating or mitigating circumstances in a capital case by engaging either in reweighing, or in traditional harmless error analysis. Clemons, 494 U.S. at 754. "Reweighing," in the case of a sentence tainted by improper application of an aggravating factor, may be accomplished in one of two ways. The state appellate court may jettison the improper factor and weigh only the remaining aggravating and mitigating factors.[4] Or, that court may apply a corrected definition of an impermissible factor and include it in the balance. Id. at 751. What an appellate court in a "weighing" state may not do under the guise of "reweighing" is to create an automatic rule that a death sentence will be upheld as long as one valid aggravating circumstance remains. Id. at 751-52.

Because Nebraska is a weighing state, it may, state law permitting, constitutionally cure a death sentence tainted by the improper application of an aggravating factor by reweighing. The district court based its belief to the contrary on its independent interpretation of Nebraska law and on Rust v. Hopkins, 984 F.2d at 1486. As noted, the district court exceeded the bounds of its

---

[3]See Williams v. Clarke, 40 F.3d 1529, 1535 (8th Cir. 1994) (Nebraska is a weighing state), cert. denied, 115 S. Ct. 1397 (1995).

[4]To review a death sentence tainted by an improper aggravator under harmless error analysis, the state appellate court engages in a similar analysis. However, rather than coming to an independent decision as to the resultant balance, it decides whether there is any reasonable doubt that the sentencer would have come to the same result had the improper factor been jettisoned, or, alternatively, been properly defined. Clemons, 494 U.S. at 752-53.

authority in rejecting the Nebraska Supreme Court's interpretation of Nebraska law. The district court also misread Rust.

In Rust, we addressed a very limited and unique situation. We were faced with a death sentence which had been imposed under a wrong and too lenient burden of proof. Rust, 984 F.2d at 1489, 1493 The Nebraska Supreme Court attempted to cure that grave error by applying the correct and more rigorous "beyond a reasonable doubt" burden on direct appeal. Id. at 1492. Relying on Hicks v. Oklahoma, 447 U.S. 343 (1980), we found that such a procedure violated due process because Rust had the right to have a three-judge sentencing panel (which we analogized to the jury in Hicks) find the relevant facts and impose his sentence in the first instance. Rust, 984 F.2d at 1493. Because a less rigorous burden of proof had been used below, there were no facts found for the Nebraska Supreme Court to review, and no death sentence for it to cure. Id. We found that under Nebraska's capital sentencing scheme, appellate factfinding and sentencing in the first instance amounted to an arbitrary and capricious disregard of state law, and deprived Rust of his liberty interest in his life without due process of law. Id.; see Hicks, 447 U.S. at 345-47.

We further found that conducting an initial sentencing proceeding on appeal, after "the entire first tier of the sentencing process was invalid[ated]," deprived Rust of his right to independent appellate review of his sentence (because, there was, in essence, no sentence, not just a flawed sentence, to review). Rust, 984 F.2d at 1493 (emphasis added). Because we interpreted Supreme Court precedent to require appellate review of capital sentences to prevent unconstitutionally arbitrary and capricious infliction of the death penalty, we found that the initial appellate sentencing carried out in Rust's case also violated due process. Id.

However, in _Rust_ we also recognized that the United States Supreme Court had explicitly found nothing constitutionally objectionable in state appellate courts making those findings of fact, even in the first instance, which are necessary to assure that Eighth Amendment capital sentencing channeling concerns are satisfied. _Id._; _see_ _Clemons_, 494 U.S. at 745-46. We therefore limited our _Rust_ decision, very carefully stating that "[a state] appellate court is fully competent to `cure' some sentencing deficiencies in capital cases." _Rust_, 984 F.2d at 1493. We explained that _Clemons_ applied to minor errors such as "improper consideration of an invalid aggravating circumstance," but not to entirely void sentencings requiring completely new factfindings. _Id._ at 1493-95. Nowhere in _Rust_ did we intimate that Nebraska could not, consistent with due process, reweigh aggravating and mitigating circumstances to cure "minor" sentencing errors such as those in issue in _Clemons_. Nor did we intimate, as indeed in view of _Clemons_ we could not, that such reweighing would amount to a deprivation of a defendant's right to appeal his sentence.[5] As we have stated in other cases, whether the Nebraska Supreme Court will engage, or has the authority to engage, in reweighing in circumstances similar to those presented in _Clemons_ is a question of state law which only it can decide.[6] _See_ _Moore v. Clarke_, 951

---

[5]We could not so intimate because _Clemons_ specifically stated that the examination of the record and attendant factfinding inherent in independent appellate reweighing does not violate due process in capital cases, and may, in fact, be necessary to assure that the petitioner receives the individualized sentencing consideration required by the Eighth Amendment. _See_ _Clemons_, 494 U.S. at 745-50; _Parker v. Dugger_, 498 U.S. 308, 321 (1991). _Clemons_ thus renders untenable any contention that appellate reweighing of aggravating and mitigating circumstances and the factfinding inherent therein conflicts with a defendant's due process rights in states with two-tier systems. _Clemons_, 494 U.S. at 746-47.

[6]The petitioner in _Clemons_ relied on _Hicks_ to argue that the Mississippi Supreme Court could not, consistent with due process, engage in reweighing because he had a statutory state law right to have all facts found by a jury and to be sentenced by a jury. In

F.2d 895, 897 (8th Cir. 1991), cert. denied, 504 U.S. 930 (1992); Harper v. Grammer, 895 F.2d 473, 480 (8th Cir. 1990).

In Clemons, the Supreme Court rejected the very argument accepted by the district court. Clemons argued that the Mississippi statutory scheme explicitly vesting death penalty sentencing authority in the jury rendered reweighing in his case unauthorized by state law and therefore a violation of due process under Hicks. Clemons, 494 U.S. at 746. According to Clemons, vesting factfinding and sentencing authority in the jury meant that the appellate courts could not, consistent with state law, engage in the "factfinding" and "sentencing" inherent in independent appellate reweighing of the factors underlying a death sentence. Since appellate courts had no state law sentencing authority, appellate reweighing would violate Clemons' right not to be deprived of a liberty interest (his life) without due process of law. The Supreme Court rejected this argument, finding that the state supreme court's assertion of independent authority to reweigh tempered the statutory scheme and made unavailable Clemons' claim to an unqualified right to exclusive jury examination or weighing of the facts or factors underlying his death penalty. Id. at 747. Clemons' express consideration and rejection of the argument that appellate reweighing is constitutionally objectionable in states where sentencing authority is statutorily vested in a lower sentencing body makes the question one of state law. Id. at 746-47.

Clemons distinguished Hicks as an instance of an appellate court admittedly acting without authority and imposing a sentence in the first instance, rather than "cur[ing] the deprivation by

---

rejecting Clemons' argument, the Supreme Court looked to the Mississippi Supreme Court's assertion of authority to reweigh, and to its history of doing so. Clemons, 494 U.S. at 747. As the Court said, it had no basis for disputing a state supreme court's interpretation of its own law. Id.

itself reconsidering the appropriateness" of the underlying void sentence.  _Id._ at 747.  The Supreme Court found the Mississippi Supreme Court's independent assertion of authority to reweigh sufficient to overcome any _Hicks_ problem.  _Id._  That the Mississippi Supreme Court later reconsidered its interpretation of its own law is of no moment.[7]  _Compare_ _Clemons v. State_, 535 So. 2d 1354, 1362-63 (Miss. 1988) (court may affirm death sentence when an invalid aggravator has been considered), _vacated_, 494 U.S. 738 (1990) _with_ _Clemons v. State_, 593 So. 2d 1004, 1006 (Miss. 1992) (court is without authority to affirm death sentence when an invalid aggravator has been considered).  What is relevant is that the original assertion of authority was enough to take the question out of the federal arena.  _Clemons_, 494 U.S. at 747.

Nebraska's capital punishment scheme is similar to Mississippi's, except that a judge or panel of three judges, rather than a jury, imposes the death penalty in the first instance.  A state appellate court's practice of reweighing defeats a defendant's assertion of an unqualified due process right to have a "jury [read sentencing panel] assess the consequences of the invalidation of one of the aggravating circumstances [which the jury had applied]."  _Id._ at 747.  The Nebraska Supreme Court has expressly asserted its authority to reweigh aggravating and mitigating circumstances.  _Reeves III_, 476 N.W.2d at 837; _see_ _State v. Moore_, 502 N.W.2d 227, 229-30 (Neb. 1993); _see_ _also_ Neb. Rev. Stat. § 29-2521.02 (Reissue 1989 & Supps. 1992-94).  Because "[w]e have no basis for disputing [the Nebraska Supreme Court's]

_____

[7]We in no way intend to imply that the Nebraska Supreme Court could not, like the Mississippi Supreme Court, reconsider its somewhat cryptic assertion of authority to reweigh, perhaps along the lines of the district court's thoughtful analysis.  On the other hand, neither do we mean to suggest that the Nebraska Supreme Court should reconsider its authority.  Our point is only that once the Nebraska Supreme Court has stated what Nebraska law is, as federal courts, our only concern is whether that determination conflicts with federal constitutional rights.

-10-

interpretation of [Nebraska] law," and because reweighing under Nebraska's sentencing scheme does not violate federal due process requirements, we find Nebraska's assertion of authority to reweigh to have been effective in Reeves' case.[8] Clemons, 494 U.S. at 747; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The dissent asserts that the Nebraska Supreme Court interprets Rust as the district court did. See infra p. 24. However, and aside from the precatory nature of any state court interpretation of our decisions, the Nebraska Supreme Court has expressly and correctly found that Rust is a limited decision, based on the invalidity of the entire sentencing proceeding, which is distinguishable on its facts from the "minor" sentencing errors at issue in Clemons. Moore, 502 N.W.2d at 229-30. The Nebraska Supreme Court has further emphatically rejected the proposition that Rust forbids state appellate reweighing in the more typical situation involving an invalid sentencing factor, and adheres to its position that it has the authority to reweigh. Moore, 502 N.W.2d at 229-30.

That the Nebraska Supreme Court has chosen, in the interests of judicial economy, to refrain from exercising its asserted authority to reweigh, pending clarification of the scope of Rust in cases such as the one now before us, cannot fairly be said to be an embracement of the district court's position. See Moore, 502 N.W.2d at 230 (declining to exercise authority to reweigh in the interests of judicial economy). That the Nebraska Supreme Court bowed, in State v. Ryan, 534 N.W.2d 766, 796 (Neb. 1995), to the

---

[8]State appellate courts are not required to reweigh, and may in certain cases find that remand is more appropriate or is even required. Clemons, 494 U.S. at 754 & n.5. When cases have a troublesome posture, such as that in Rust, "[a] state appellate court's decision to conduct harmless-error analysis or to reweigh aggravating and mitigating factors rather than remand to the sentencing jury [will] violate[] the Constitution [as being] made arbitrarily." Id. at 754-55 n.5.

-11-

district court's decision and interpretation of <u>Rust</u> in this case, hardly amounts to the Nebraska Supreme Court <u>interpreting</u> <u>Rust</u> as the district court did.  Indeed, it only further highlights the injury done to comity when federal courts reject state supreme court interpretations of their own law.

In fact, even the dissent acknowledges that <u>Rust</u> is no bar to reweighing by the Nebraska Supreme Court.  <u>See</u> <u>infra</u> p. 24. Rather, the dissent joins the district court in finding fault with the Nebraska Supreme Court's interpretation its own law.

## B. Instructions

Because of its application of <u>Rust</u>, the district court did not consider all matters raised by Reeves.  <u>Reeves v. Hopkins</u>, 871 F. Supp. 1182, 1193 n.11 (D. Neb. 1994).  Since we prefer to address all the issues in a case at one time, rather than have a protracted, issue by issue, series of remands, <u>see generally</u> <u>Rust v. Clarke</u>, 960 F.2d 72, 73-74 (8th Cir. 1992), <u>cert. denied</u>, 113 S. Ct. 2950 (1993),[9] we return this case with instructions to consider and decide all issues raised but not addressed by the district court.  We request that the district court make every effort to decide these issues within 120 days.  We retain jurisdiction and will consolidate any appeal of the resolution of the undecided issues with those issues still pending before us.

## III. CONCLUSION

We reverse in part, and remand for further proceedings consistent with this opinion and with our instructions.

---

[9]We realize that this may be a case of "do as we say and not as we do."  Nonetheless, we prefer that district courts address and resolve all issues to avoid time-consuming remands and to ensure that cases are fully resolved within a reasonable time frame.

BRIGHT, Circuit Judge, dissenting.


I dissent.

**I.**


To place this case in its appropriate context, we examine the action of the Nebraska Supreme Court in this case. The court stated:


> We have balanced the aggravating and mitigating factors anew and have determined that the aggravating circumstances outweigh any statutory or non statutory mitigating circumstances in this case. . . . Sentences of death remain the appropriate penalties for Reeves.

State v. Reeves (Reeves III), 476 N.W.2d 829, 841 (Neb. 1991).


The question for this court is from whence did the Nebraska Supreme Court obtain and assert this power?


The Reeves court articulates a very specific source. This right derives from the United States Supreme Court case of Clemons v. Mississippi, 494 U.S. 738 (1990). As the Reeves opinion asserts:


> In summary, Clemons v. Mississippi, 494 U.S. 738 . . . (1990), sets forth three options available to appellate courts in death penalty cases where there has been an error concerning the trial court's finding of aggravating and/or mitigating circumstances. First, the court may analyze and reweigh the aggravating and mitigating circumstances itself to determine whether or not the scale tips in favor of the death penalty. Second, the court may conduct a harmless error analysis to determine whether or not error by the district court in finding aggravating or mitigating circumstances has prejudiced the rights of the defendant. Third, the court may remand the cause for a new sentencing hearing.


-13-

<u>Reeves</u>, 476 N.W.2d at 834.

All well and good so far!  The Nebraska Supreme Court asserts a power permitted by the United States Supreme Court.  But what if the statutes of a state do not permit the sentencing options permitted by <u>Clemons</u>?

An answer is indicated by the very same <u>Clemons</u> case.  The Mississippi Supreme Court on remand from the United States Supreme Court stated that the United States Supreme Court has

> settled the question from a federal constitutional standpoint of a state appellate court's ability to reweigh aggravating and mitigating circumstances . . . [but] we must decide, as a matter of state law, our authority to reweigh aggravating and mitigating circumstances in order to uphold a death sentence which is based in part upon an improperly defined aggravating circumstance.

<u>Clemons v. State</u>, 593 So.2d 1004, 1005 (Miss. 1992).

Reviewing its own sentencing procedures, which as the majority notes are quite similar to those in Nebraska, the Mississippi high court stated,

> From these statutory provisions, two things are clear:  only the jury, by unanimous decision, can impose the death penalty; as to aggravating circumstances, this Court only has the authority to determine whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance.  There is no authority for this Court to reweigh remaining aggravating circumstances when it finds one or more to be invalid or improperly defined, nor is there authority for this Court to find evidence to support a proper definition of an aggravating circumstance in order to uphold a death sentence by reweighing.  Finding aggravating and mitigating circumstances, weighing them, and ultimately imposing a death sentence are, by statute, left to a properly instructed jury.

-14-

Id. at 1006.

Moreover, the Mississippi Supreme Court recognized that it had previously upheld death sentences on several occasions earlier where there existed an invalid aggravating circumstance. The Clemons court then unequivocally rejected its previous opinion (Johnson v. State, 547 So.2d 59, 60 (Miss. 1989)), which may have contained an "indication" or "implication" for the court's authority to reweigh under Clemons. Id. at 1006.

Does a similar analysis apply in Nebraska?

After following the tortured and extensive course of the Clemons litigation in state and federal courts, this basic question arises in state appellate review of death sentences in weighing states such as Mississippi and Nebraska where an invalid aggravating circumstance has been improperly weighed in with other aggravating and mitigating circumstances and produced a death penalty: Does the state appellate court have power under state law to reweigh the remaining valid aggravating and mitigating circumstances so as to sustain that penalty?

As I have observed, Mississippi, through its Supreme Court, has said "No."

What has Nebraska said on this issue? The answer is plainly "Nothing." It has never spoken on the subject. Like Mississippi's earlier cases,[10] it merely assumed it possessed the power.

---

[10]The Supreme Court of Mississippi wrote:

We acknowledge, as the United States Supreme Court recognized in its opinion, that this Court has upheld death sentences in the face of an invalid aggravating circumstance. See, e.g. Nixon v. State, 533 So.2d 1078, 1099 (Miss. 1988); Lanier v. State, 533 So.2d 473, 491 (Miss. 1988); Faraga v. State, 514 So.2d 295, 309 (Miss.

In this case, two excellent Nebraska judges serving the federal courts, Magistrate Judge David Piester initially in recommending habeas relief and United States District Judge Richard Kopf in granting relief under habeas corpus, carefully examined the Nebraska cases and the Nebraska law.

In an extensive district court opinion, Judge Kopf reached the following conclusions:

> the Nebraska Supreme Court wrongly read <u>Clemons</u> (and its progeny) to mean that if federal law allowed appellate resentencing, state law also allowed appellate resentencing; . . .

> When the Nebraska Supreme court made this assumption, it created a state procedure that had not been authorized by the Nebraska Legislature.

<u>Reeves v. Hopkins</u>, 871 F. Supp. 1182, 1194 (D. Neb. 1994).

The federal district court then addressed in detail the state statutes of Nebraska relating to death sentences:

> Nebraska statutes clearly create a two-tier sentencing process. Moreover, the Nebraska statutes differentiate the roles to be performed by the state district court sentencing panel and the Nebraska Supreme

---

1987); <u>Johnson v. State</u>, 511 So.2d 1333, 1337 (Miss. 1987); <u>Stringer v. State</u>, 500 So.2d 928, 945 (Miss. 1986); <u>Wiley v. State</u>, 484 So.2d 339, 351 (Miss. 1986); <u>Irving v. State</u>, 498 So.2d 305, 314 (Miss. 1986); <u>Edwards v. State</u>, 441 So.2d 84, 92 (Miss. 1983). However, these cases express the notion, based on <u>Zant v. Stephens</u>, 462 U.S. 862, 880-84 . . . (1983), that so long as there remains even one valid aggravating circumstance this Court can uphold the death sentence. The United States Supreme Court has now unequivocally established in <u>Clemons</u> that an "automatic rule of affirmance in a weighing State would be invalid. . . ." 494 U.S. at 752. . . .

<u>Clemons v. State</u>, 593 So.2d at 1006.

Court.  And, most importantly, the Nebraska statutes simply do not give the Nebraska Supreme Court the authority to resentence once it has found that the sentencing panel engaged in harmful error in its weighing of aggravating and mitigating circumstances.  Rather, state law makes clear that it is the sentencing panel that must "sentence," not the appellate court, and when Petitioner was deprived of this state-created right in Reeves III, his federal due process rights were violated.

First, the Nebraska statutes go to great lengths to set out how the sentencing hearing will be conducted by the district court sentencing panel, even requiring the sentencing panel to "set forth the general order of procedure at the outset of the sentence determination proceeding."  Neb. Rev. Stat. § 29-2521 (Reissue 1989).  After such proceedings have been completed, the sentencing panel is required to issue a written determination, including findings of fact, "based upon the records of the trial and the sentencing proceeding . . . ."  Neb. Rev. Stat. § 29-2522 (Reissue 1989).  There is no similar provision in the Nebraska statutes pertaining to the Nebraska Supreme Court and, hence, absolutely no reason to think that the Nebraska Legislature authorized or intended to authorize the Nebraska Supreme Court to perform the same function as the sentencing panel.

Second, Nebraska statutes provide only two remedies where the Nebraska Supreme Court disagrees with the sentencing panel on aggravating and mitigating circumstances:  (a) the Nebraska Supreme Court may "reduce" the sentence, Neb. Rev. Stat. § 29-2521.03 (Reissue 1989); or (b) it may remand for a "new trial" (sentencing proceeding).  Neb. Rev. Stat. § 29-2528 (Reissue 1989).

If the Nebraska Supreme Court disagrees with the sentencing panel regarding aggravating and mitigating circumstances, "[t]he Supreme Court may reduce any sentence which it finds not to be consistent with sections . . . 29-2522 [which requires the sentencing panel to, among other things, weigh the statutory aggravating and mitigating circumstances] . . . ."  Neb. Rev. Stat. § 292-2521.03 (emphasis added).

If the Nebraska Supreme Court chooses not to reduce the sentence pursuant to Neb. Rev. Stat. § 29-2521.03 under such circumstances, there is no authorization in the Nebraska statutes for the court to "reweigh" the aggravating and mitigating circumstances for purposes of resentencing.  Indeed, aside from the ability to "reduce"

a death penalty sentence because it does not comply with the Nebraska statute that requires the district court sentencing panel to weigh aggravating and mitigating circumstances, Neb. Rev. Stat. § 29-2521.03, the Nebraska Supreme Court is limited to three orders, none of which allow resentencing through reweighing by the Nebraska Supreme Court:

> **Death penalty cases; Supreme Court; orders.** In all cases <u>when the death penalty has been imposed by the district court</u>, the Supreme Court shall, after consideration of the appeal, order the prisoner to be discharged, a new trial to be had, or appoint a day certain for the execution of the sentence.

Neb. Rev. Stat. § 29-2528 (emphasis added).

Since the Nebraska Legislature went to the trouble to be quite explicit about the remedies given the Nebraska Supreme Court in the event of nonharmless error regarding aggravating/mitigating circumstances (reduction of sentence or remand for a new hearing), the Nebraska statutes cannot properly be construed to provide a remedy that is not explicitly mentioned in those statutes.

Third, the Nebraska statutes give the "weighing" function only to the district court sentencing panel. Neb. Rev. Stat. § 29-2522. In contrast, the statutes direct the Nebraska Supreme Court to "review and analyze" the actions of the sentencing panel. Neb. Rev. Stat. §§ 29-2521.01(5) & 29-2521.02 (Reissue 1989).

The only place in the Nebraska statutes where any court is directed by the Nebraska Legislature to "weigh" aggravating and mitigating circumstances is Neb. Rev. Stat. § 29-2522, where "the <u>judge or judges</u>" are directed to "fix the sentence at either death or life imprisonment" after determining, among other things, "[w]hether sufficient mitigating circumstances exist which approach or exceed <u>the weight</u> given to the aggravating circumstances . . . ." <u>Id.</u> (emphasis added).

In this regard, I observe that the phrase "judge or judges" as used in the foregoing statute can only mean the state district court sentencing panel which must, pursuant to Neb. Rev. Stat. § 29-2520 (Reissue 1989), consist of the trial judge or the trial judge plus two

other judges (or in the case of disability or disqualification of the trial judge, three other state district judges). The Nebraska statutes consistently use the words "Supreme Court" when referring to the Nebraska Supreme Court. <u>See, e.g.</u>, Neb. Rev. Stat. §§ 29-2521.01(5), 29-2521.02, 29-2521.03, 29-2521.04 (Reissue 1989). Thus, the difference in the statutory language, i.e., "judge or judges" versus "Supreme Court," makes it clear that the words "judge or judges" in section 29-2522 refer to the sentencing panel and not the Nebraska Supreme Court.

. . . .

In summary, the Nebraska statutes plainly do not permit appellate resentencing when there is nonharmless error regarding aggravating/mitigating circumstances because (1) the Nebraska statutes provide a very specific procedure for sentencing before the sentencing panel, but no such procedure is provided for the appellate court; (2) the Nebraska statutes explicitly provide that the Nebraska Supreme Court's remedial powers in the event of nonharmless error regarding aggravating/mitigating circumstances are limited to "reduction" of sentence or to ordering a new sentencing hearing; (3) the "weighing" function is explicitly given to the state district court sentencing panel, and the "review-and-analysis" function is allocated to the Nebraska Supreme Court; and (4) the only court authorized to impose a death sentence is the district court, not the Nebraska Supreme Court.

**b.**

The second reason I am persuaded that Nebraska law does not allow appellate resentencing is that <u>Reeves III</u> is silent on the matter. Nowhere in <u>Reeves III</u> does the Nebraska Supreme Court explicitly confront the question of whether Nebraska law allows appellate resentencing. Nowhere does the Nebraska Supreme Court explain under what state grant of authority the court believed itself empowered to engage in appellate resentencing. Nowhere does the Nebraska Supreme Court explain by reference to the Nebraska death penalty laws how the court derived the power to engage in appellate resentencing, thereby depriving Reeves of his statutory entitlement to sentencing by the district court sentencing panel.

<u>Reeves v. Hopkins</u>, 871 F. Supp. at 1195-98 (footnotes omitted).

Judge Kopf's opinion then observes that the Nebraska Supreme Court has never referred to state law as a basis for its reweighing function.  Id. at 1198-99.

I, too, have searched the Nebraska case law and agree with the district court in concluding that the Nebraska Supreme Court has never articulated a source of authority to reweigh in its state statutes.

For its excellent scholarship and discourse on Nebraska law, the majority gives these Nebraska federal judges this comment: "As noted, the district court exceeded the bounds of its authority in rejecting the Nebraska Supreme Court's interpretation of Nebraska law."  Slip. op. at 6-7.

This comment is undeserved.  One can look in vain for any source of state statutory power authorizing the Supreme Court of Nebraska to reweigh.  Nowhere does the majority discuss Nebraska statutory sentencing procedures.  Moreover, nowhere in its opinion does the majority discuss statutory sentencing procedures or Nebraska cases discussing state law as authorizing reweighing (resentencing).

As I see it, where the Nebraska Supreme Court has never interpreted its sentencing statutes in regard to resentencing or reweighing, the federal courts are free to do so, indeed may be obligated to do so.  See Burrus v. Young, 808 F.2d 578, 586 (7th Cir. 1986) (Coffey, J., concurring) ("when reviewing a federal writ of habeas corpus we are frequently called upon to interpret state law and in that manner are properly performing our function as a federal appellate court"); see also Banner v. Davis, 886 F.2d 777, 782 (6th Cir. 1989) (contrasting prior case where court had permissibly interpreted state law in "narrow situation in which the state courts below had failed to give a clear expression on the issue" with present case where state courts had carefully

-20-

considered and analyzed scope of state statues); cf. Cole v. Young, 817 F.2d 412, 422-23 n.7 (7th Cir. 1987) (refuting dissent's criticism that majority was failing to abide by state court's interpretation of state law question and claiming state law question left unanswered by state court).

Thus, the district court did not depart from its proper function in examining and interpreting the Nebraska statutes in this habeas proceeding. No prior Nebraska Supreme Court decision foreclosed that duty.

## II.

In addition, the district court properly followed the precedent laid down by another panel of this court relating to a Nebraska death sentence in Rust v. Hopkins, 984 F.2d 1486 (8th Cir.), cert. denied, 113 S. Ct. 2950 (1993) and, in my judgment the majority failed in its obligation to follow that case.

Judge Richard Kopf, then serving as magistrate judge, made the analysis in the Rust case. The district judge then adopted Judge Kopf's analysis. I am certain that with this background, Judge Kopf became keenly aware of the issues relating to the death sentences imposed on Reeves.

In Rust, the state sentencing panel in imposing death found aggravating circumstances by a standard of proof less than beyond a reasonable doubt. This erroneous proof was reweighed by the Nebraska Supreme Court as sufficiently proved beyond a reasonable doubt and it reinstated the death penalty. Rust, 984 F.2d at 1487-89.

A panel of three judges, John R. Gibson, Lay and Loken, in an unanimous opinion by Judge John R. Gibson, affirmed the grant of habeas relief notwithstanding the claim of Nebraska through Warden

Hopkins that Clemons v. Mississippi, 494 U.S. 738 (1990), the reweighing analysis performed by the Nebraska Supreme Court.

The panel reviewed the Nebraska statutes and determined that Rust:

> had a statutory right to: (1) have his trial judge or a three-judge panel including his trial judge consider aggravating circumstances based on facts proven beyond a reasonable doubt and to sentence him based on those findings; and (2) have the determination of that sentencing panel reviewed in the Nebraska Supreme Court. While created by state law, these are not "procedural right[s] of exclusively state concern," they are liberty interests protected by the Fourteenth Amendment.

Rust v. Hopkins, 984 F.2d 1486, 1493 (8th Cir. 1993).

The Nebraska two-tiered sentencing procedure first created a liberty interest in having a panel of judges make particular findings which could not be cured by appellate review and, secondly, a constitutional right to a meaningful appellate review of the sentence. The Rust court said:

> The whole point of the two-tier sentencing procedure is that the initial determination is reviewed by an independent appellate court. The two-tier process would be subverted if the Nebraska Supreme Court could step in and fully perform the work of the sentencing panel. Yet that is precisely what happened in this case.

Id.

The majority seeks to distinguish Rust on its facts but such attempted distinction has no application to the crucial underpinning of Rust that Nebraska follows a two-tier sentencing scheme, giving a criminal defendant the due process right to be sentenced or resentenced (reweighed) by a panel of district judges and further to receive meaningful appellate review.

The district court properly relied on Rust for its ruling.

-22-

## III.

As I have noted, the district court applied <u>Rust</u> as one of its reasons to bar appellate reweighing in Nebraska.

As the district court aptly observed and commented that the Nebraska Supreme Court has read and followed <u>Rust</u>, and has not attempted to reweigh a defendant's sentence after the issuance of the <u>Rust</u> decision by this circuit. The district court opinion stated:

> Subsequent to <u>Reeves III</u>, the Nebraska Supreme Court announced it would no longer engage in appellate resentencing as a result of the Eighth Circuit decision in <u>Rust v. Hopkins</u>. <u>State v. Moore</u>, 243 Neb. 679; 502 N.W.2d 227 (1993). While asserting that "we have the authority to resentence by analyzing and reweighing the aggravating and mitigating factors of the case," <u>id.</u>, 243 Neb. at 681, 502 N.W.2d at 229, the Nebraska Supreme Court stated in <u>Moore</u> that it would no longer do so in light of <u>Rust v. Hopkins</u>. The court made it clear that it disagreed with <u>Rust v. Hopkins</u>, but also recognized that it would be a waste of judicial resources to proceed with appellate resentencing in light of the holding in <u>Rust</u> because "the federal court would likely reverse." <u>Id.</u>, 243 Neb. at 683; 502 N.W.2d at 230.

> The only basis for the opinion expressed in <u>Moore</u> that the Nebraska Supreme Court had the authority under state law to engage in appellate resentencing was a citation to <u>Reeves III</u>. <u>Id.</u>, 243 Neb. at 681; 502 N.W.2d at 228-29. And, as noted earlier, the only basis for appellate resentencing in <u>Reeves III</u> was the Supreme Court's opinion in <u>Clemons</u>. Accordingly, <u>Moore</u> is no more illuminating than the earlier opinions of the Nebraska Supreme Court on the state law basis for appellate resentencing.

> I am thus convinced that none of the opinions of the Nebraska Supreme Court have articulated a state law basis for appellate resentencing.

<u>Reeves v. Hopkins</u>, 871 F. Supp. at 1199.

Finally, I would add the additional language of the Nebraska Supreme Court as written in State v. Ryan, 534 N.W.2d 766 (Neb. 1995):

> However, the U.S. Court of Appeals for the Eighth Circuit has held that appellate reweighing violates a defendant's right to due process under Nebraska's death penalty sentencing statutes. See Rust v. Hopkins, 984 F.2d 1486 (8th Cir. 1993), cert. denied, 113 S.Ct. 2950 . . . . See, also, Reeves v. Hopkins, 871 F. Supp. 1182 (D.Neb. 1994). That leaves this court with the options of performing a harmless error analysis or remanding the cause to the district court for a new sentencing hearing. See State v. Reeves, 239 Neb. 419, 476 N.W.2d 829 (1991), cert. denied, 113 S. Ct. 114 . . . (1992). We elect to perform a harmless error analysis.

Ryan, 534 N.W.2d at 796.

It is odd jurisprudence that the majority here gives so little credence to a panel opinion of the Eighth Circuit while district judges and the fine judges of the Nebraska Supreme Court have little difficulty in interpreting the language of the Rust case to mean that the Nebraska Supreme Court will violate a prisoner's due process rights by barring that prisoner's right to resentencing to death or not by the sentencing panel and thereafter to meaningful appellate review, except for a review for harmless error.

I add a comment. I personally have high regard, as do my brothers and sister on this circuit, for the distinguished justices of the Nebraska Supreme Court. If that court should make an analysis of the Nebraska statutes and determine that those laws authorize reweighing by the high court of Nebraska, no federal judge can overrule that decision on state law. But until such a result is reached, which may be quite unlikely given the text of the relevant statutes, I believe that the Nebraska Supreme Court in its current practice is properly following a federal constitutional

due process requirement in assigning reweighing (resentencing) in death sentence cases to the initial sentencing panel.

I believe that the majority opinion serves to confuse and create great uncertainty in the law of sentencing a person to death in Nebraska, where uncertainty is now absent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.