STATE OF NEBRASKA, APPELLEE, V.
RANDOLPH K. REEVES, APPELLANT.
604 N.W.2d 151

Filed January 7, 2000. No. S-99-064.

Paula Hutchinson and Timothy K. Ford, of Counsel, for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## I. NATURE OF CASE

Randolph K. Reeves appeals the order of the district court for Lancaster County denying his "Motion for Postconviction Relief." We reverse the order of the district court, vacate the sentences of death, and remand the cause for resentencing.

## II. STATEMENT OF FACTS

Reeves was convicted of two counts of felony murder committed in the course of committing or attempting to commit first degree sexual assault and was sentenced to death on both counts. His convictions and sentences were affirmed on direct appeal. See *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433, *cert. denied* 469 U.S. 1028, 105 S. Ct. 447, 83 L. Ed. 2d 372 (1984) (*Reeves I*).

The details of the murders underlying Reeves' convictions are set forth in *Reeves I* and subsequent opinions of this court, and we do not repeat them here. We briefly describe the procedural history of this case in this statement of facts and further discuss the procedural history as necessary to our analysis of Reeves' claims.

Following the affirmance of his convictions and sentences in his direct appeal, Reeves filed a petition in state district court for postconviction relief, which was denied. That denial was affirmed by this court on appeal. *State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990) (*Reeves II*). Reeves successfully petitioned the U.S. Supreme Court for a writ of certiorari. *Reeves v. Nebraska*, 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409 (1990). Upon granting the petition for a writ of certiorari, the U.S. Supreme Court stated, "judgment vacated, and case remanded for further consideration in light of *Clemons v. Mississippi*, 494 U. S. 738 (1990)." For our purposes, *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), generally held that where a death sentence was imposed upon a criminal defendant based in part upon an invalid or inappropriate conclusion as to the existence of an aggravating circumstance, federal constitutional principles did not prevent a state appellate court from conducting a harmless error review or, alternatively, reweighing the trial evidence to determine if the death sentence was nonetheless appropriate, if the state's law empowered the appellate court to reweigh evidence and the reweighing was performed consistent with that law.

Before the U.S. Supreme Court had announced its decision in *Clemons* on March 28, 1990, this court had determined in *Reeves I* on January 20, 1984, that the trial court sentencing panel had erred in its consideration of aggravating and mitigating circumstances but that the death sentence was, nevertheless, justified as to each count. More specifically, in *Reeves I*, this court concluded that the sentencing panel had erroneously considered a statutory aggravating factor as to one victim, Victoria Lamm, which should not have been applied and failed to consider one mitigating factor as to each victim, Lamm and Janet Mesner.

Following the remand from the U.S. Supreme Court in 1990 but prior to this court's consideration of the case in light of *Clemons*, Reeves moved this court for an evidentiary hearing, which was denied. Upon remand, this court examined the trial and sentencing evidence and resentenced Reeves to death. *State v. Reeves*, 239 Neb. 419, 476 N.W.2d 829 (1991), *cert. denied* 506 U.S. 837, 113 S. Ct. 114, 121 L. Ed. 2d 71 (1992) (*Reeves III*).

Reeves moved this court for a rehearing and a reconsideration of *Reeves III*, both of which were denied. It is the resentencing by this court in *Reeves III* stemming from his first postconviction case which was challenged in the instant second postconviction proceeding and is the subject of the current appeal.

Following this court's decision in *Reeves III*, Reeves sought a writ of habeas corpus in the U.S. District Court for the District of Nebraska challenging, inter alia, the resentencing procedure in *Reeves III*. Relief was granted, see *Reeves v. Hopkins*, 871 F. Supp. 1182 (D. Neb. 1994), but was reversed in part on appeal to the U.S. Court of Appeals for the Eighth Circuit, see *Reeves v. Hopkins*, 76 F.3d 1424 (8th Cir. 1996). In *Reeves v. Hopkins*, 871 F. Supp. 1182 (D. Neb. 1994), the federal district court granted habeas relief to Reeves on the basis that this court lacked authority to resentence Reeves in *Reeves III*, thus violating his right to due process. In reaching this conclusion, the district court concluded that this court wrongly read *Clemons* to hold that if federal law allowed appellate resentencing, state law also allowed it. The district court then extensively considered the Nebraska statutory scheme relating to death sentences and concluded that Nebraska statutes did not provide this court with authority to resentence in *Reeves III*. In particular, the federal district court stated:

> The Nebraska Supreme Court assumed that if federal law allowed appellate reweighing (resentencing), state law also allowed appellate resentencing. When the Nebraska Supreme court made this assumption, it created a state procedure that had not been authorized by the Nebraska Legislature. Even more disturbing, the *Reeves III* court created and implemented for the first time a sentencing procedure that directly conflicted with the provisions of

Nebraska law and arbitrarily deprived Reeves of two important state-created rights: (a) the right to have a sentencing panel including his trial judge make the initial determination of the appropriateness of the death penalty by *properly* applying aggravating and mitigating factors and thereafter impose the death sentence, and (b) the right to have the decision of the sentencing panel "reviewed" but not supplanted by appellate resentencing.

871 F. Supp. at 1194. The federal district court also relied on *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1993), *cert. denied* 508 U.S. 967, 113 S. Ct. 2950, 124 L. Ed. 2d 697, for further support that this court lacked statutory authority to reweigh and resentence. *Rust* generally held that *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), allows appellate resentencing only if state law authorizes resentencing at the appellate level. In discussing *Rust*, the federal district court noted that this court went even further in *Reeves III* than in *Rust* by striking one aggravating factor with respect to Lamm and finding the existence of a mitigating factor in the deaths of both Lamm and Mesner. The federal district court concluded that as in *Rust*, this court's actions in *Reeves III* invalidated the entire first tier of the sentencing process. Thus, the federal district court concluded that this court's actions in *Reeves III* deprived Reeves of his rights (1) to be sentenced by a panel that did not commit harmful error and (2) to have that sentence reviewed on appeal.

The U.S. Court of Appeals for the Eighth Circuit in *Reeves v. Hopkins*, 76 F.3d 1424 (8th Cir. 1996), reversed the district court's decision on the basis that the federal district court had exceeded the bounds of its authority by rejecting this court's interpretation of Nebraska state law. Although the Eighth Circuit recognized that this court's assertion of authority to reweigh was "somewhat cryptic" and referred to the district court's analysis as "thoughtful," the Eighth Circuit interpreted this court's action of resentencing in *Reeves III* to be an assertion of this court's authority under state law to resentence. 76 F.3d at 1429 n.7. As the existence of such authority was a matter of state law, the Eighth Circuit concluded that the federal courts did not have the power to reverse this court's holding on an issue of state law.

*Id.* at 1427. The Eighth Circuit distinguished *Rust* on the basis that under *Rust*, this court could, consistent with federal due process, reweigh aggravating and mitigating circumstances to cure " 'minor' " sentencing errors such as those in *Clemons*. 76 F.3d at 1429. *Rust* was limited "based on the invalidity of the entire sentencing proceeding." 76 F.3d at 1430.

In a dissent to *Reeves v. Hopkins*, 76 F.3d 1424, 1434 (8th Cir. 1996), Judge Bright of the Eighth Circuit noted that "the Nebraska Supreme Court has never referred to state law as a basis for its reweighing function" and stated his agreement with the federal district court that Nebraska's statutory scheme does not provide authority for this court to perform reweighing and resentencing in cases involving a death sentence. Judge Bright further stated that the crucial underpinning of *Rust* was that Nebraska follows a two-tier sentencing procedure, giving a defendant the due process right to be sentenced or resentenced by the trial judge or a three-judge district court panel and to receive meaningful appellate review.

On remand, the U.S. District Court again granted Reeves relief based on Reeves' challenge to this court's resentencing methodology in *Reeves III*, specifically, lack of notice and an opportunity to be heard. *Reeves v. Hopkins*, 928 F. Supp. 941 (D. Neb. 1996). The U.S. District Court's ruling pertaining to the sentencing methodology in *Reeves III* was again reversed on appeal. The Eighth Circuit further determined, however, that Reeves was entitled to habeas corpus relief on an unrelated basis pertaining to jury instructions and, therefore, granted his petition. *Reeves v. Hopkins*, 102 F.3d 977 (8th Cir. 1996). The U.S. Supreme Court reviewed the jury instruction issue and reversed the decision of the U.S. Court of Appeals for the Eighth Circuit, thus, in effect, concluding Reeves' first postconviction proceedings in the summer of 1998. *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998).

On December 15, 1998, Reeves filed a second petition for postconviction relief in the district court for Lancaster County. It is the district court's denial of relief from this second postconviction petition which is the subject of this appeal. The focus of this petition was a challenge to this court's resentencing of Reeves in *Reeves III* in connection with his first postconviction case.

In his current postconviction petition, Reeves alleges that both the newly enacted amendment to Neb. Const. art. I, § 3, effective December 9, 1998, creating a state constitutional right to equal protection of the laws and the federal guarantee of equal protection, U.S. Const. amend. XIV, preclude application of the death penalty to him, because he is the only capital defendant in Nebraska who has been resentenced by the Nebraska Supreme Court, and the imposition of such sentence and the pending enforcement thereof are the result of an unconstitutional pattern of racial discrimination. Reeves is Native American. Reeves further alleges in his petition that when the Nebraska Supreme Court resentenced him to death in *Reeves III* after his death sentences were vacated by the U.S. Supreme Court in *Reeves v. Nebraska*, 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409 (1990), this court failed to follow the terms of the death penalty sentencing statutes, Neb. Rev. Stat. §§ 29-2519 to 29-2546 (Reissue 1989) (now found in Reissue 1995 & Cum. Supp. 1998), by resentencing Reeves rather than remanding the cause for resentencing by the trial court. Reeves alleges that this court's resentencing in *Reeves III* was a "Denial of a Lawful and Constitutional Trial Level Sentencing." As pled in his second petition for postconviction relief, we understand this allegation of failure to adhere to the Nebraska death penalty statutes in *Reeves III* to be a claim of a violation of a life interest and a denial of due process. Reeves also alleges in his second postconviction petition that death by electrocution as prescribed by § 29-2532 is cruel and unusual punishment prohibited by U.S. Const. amend. VIII and Neb. Const. art. I, § 9.

The district court denied Reeves' petition for postconviction relief on January 5, 1999, without an evidentiary hearing. In its order, the district court concluded that "each and every one of the defendant's claims was, or could have been, raised on direct appeal or in an earlier post conviction proceeding," but, nevertheless, ruled on Reeves' claims because "both parties raised substantive arguments." The district court concluded that the newly passed equal protection amendment to Nebraska's Constitution could not be applied retroactively to grant Reeves postconviction relief. The district court found no merit to Reeves' allegations based on federal equal protection guarantees

pertaining to disparate racial treatment in connection with Reeves' resentencing or that Reeves was subject to cruel and unusual punishment. Reeves appeals from the district court's order denying him relief in this second postconviction case.

## III. ASSIGNMENTS OF ERROR

Reeves claims, restated, that the district court erred in refusing to apply the newly created equal protection amendment to the Nebraska Constitution to invalidate his death sentence and that under a variety of theories, his equal protection and due process rights under the state and federal Constitutions were violated in connection with his resentencing in *Reeves III*. Reeves claims the district court erred in finding that he was procedurally barred from raising his claims challenging the resentencing in *Reeves III*. Reeves also claims that the district court erred in refusing to grant him relief on his claim that enforcement of the death penalty by electrocution is cruel and unusual punishment.

## IV. STANDARDS OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999).

Regarding questions of law, an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

## V. ANALYSIS

Reeves filed his second petition for postconviction relief pursuant to the Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1995). Postconviction proceedings under the act are civil in nature. *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). For relief to be granted under the act, the claimed infringement must be constitutional in dimension. *State v. Dandridge*, 255 Neb. 364, 585 N.W.2d 433 (1998). An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Constitution of either Nebraska or the

United States. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required. *State v. Smith, supra.*

### 1. EQUAL PROTECTION CLAIMS

#### (a) Nebraska Equal Protection

On November 3, 1998, Nebraska voters approved L.R. 20CA, an amendment to Neb. Const. art. I, § 3, adding the following language, delineated herein by underlining: "No person shall be deprived of life, liberty or property, without due process of law, nor be denied equal protection of the laws." 95th Leg., 1st Sess. 4 (May 21, 1997). On December 15, 1998, Reeves filed his second motion for postconviction relief, seeking to set aside his death sentences based, in part, upon this recently enacted constitutional amendment. Reeves claims he was denied equal protection based on race under the state Constitution in connection with his resentencing in *Reeves III* and in enforcement of the death penalty. The State argues on appeal that as the district court concluded, the constitutional amendment should not be applied retroactively.

Under Nebraska law, a "constitutional amendment operates prospectively only, unless the words employed show a clear intention that it should have a retrospective effect." *Luikart v. Higgins,* 130 Neb. 395, 400, 264 N.W. 903, 905 (1936). This court stated in *Luikart* that constitutional amendments are like statutory amendments and absent " 'something on the face of the enactment putting it beyond doubt that the legislature meant it to operate retrospectively,' " a constitutional amendment has prospective operation only. *Id.* (quoting 1 Thomas M. Cooley, Constitutional Limitations at 136 (8th ed. 1927)). Similarly, the U.S. Supreme Court has held, in *Shreveport v. Cole,* 129 U.S. 36, 43, 9 S. Ct. 210, 32 L. Ed. 589 (1889), that "[c]onstitutions as well as statutes are construed to operate prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest beyond reasonable question." Our review of the current case law in this area leads us to conclude that the general rule remains unchanged. See, e.g., *People v. Dean,* 175 Ill. 2d 244, 677 N.E.2d 947, 222 Ill. Dec. 413 (1997) (holding

that constitutional amendment operates prospectively unless language of amendment clearly indicates intent to apply amendment retroactively); *State v. Cousan*, 684 So. 2d 382 (La. 1996); *People v Gornbein*, 407 Mich. 330, 285 N.W.2d 41 (1979); *State ex rel. Moore v. Molpus*, 578 So. 2d 624 (Miss. 1991).

■ Nothing in the language of Nebraska's equal protection amendment indicates an intention, much less an intention beyond doubt, see *Luikart, supra*, that the amendment operate retroactively. Accordingly, we hold that the amendment to Neb. Const. art. I, § 3, providing that "no person shall . . . be denied equal protection of the laws" operates prospectively only. Thus, Nebraska's equal protection amendment is inapplicable to Reeves' claim of denial of equal protection under the state Constitution in connection with the 1991 resentencing in *Reeves III*.

■ Reeves argues that his claim of denial of equal protection based on alleged racial disparity is also addressed to his unenforced death penalty. Reeves argues that the application of the Nebraska constitutional amendment as to this claim is therefore prospective. We agree that the Nebraska equal protection amendment applies to this claim. However, Reeves further alleges that "it cannot be proved that these racial disparities are the result of conscious racial discrimination by any particular state actor or group of state actors." In order to prove that a defendant's race unconstitutionally taints enforcement of the death penalty, the defendant must at a minimum establish that the decision to enforce the death penalty is based on a conscious discriminatory purpose, resulting in a discriminatory effect suffered by the defendant. *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987). We apply the principles enunciated in *McCleskey* here. Reeves has failed to plead facts which under *McCleskey* entitle him to relief, admits that he cannot establish the facts to show he is entitled to relief on his claim of denial of equal protection in enforcement of the death penalty, and has pled merely conclusions. Accordingly, he is not entitled to relief on his claim of racial disparity in the enforcement of the death penalty under the state equal protection constitutional provision. See *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999). See, also, *McCleskey, supra*. The district

court's order denying Reeves postconviction relief based upon Nebraska's equal protection clause without an evidentiary hearing was correct as a matter of law and is affirmed.

### (b) Federal Equal Protection

Reeves argues that he was denied equal protection in the imposition of his death sentences in contravention of federal constitutional guarantees. The district court properly rejected this claim.

In his petition for postconviction relief, Reeves asserts that since 1980, a disproportionately high number of nonwhite defendants including Native Americans and African-Americans have been sentenced to death. Reeves alleges that since 1973, no Native American and no African-American has been appointed to serve as a state district court judge, Nebraska Supreme Court justice, or member of the State Board of Pardons. Reeves alleges that "[m]itigating circumstances arising from a person's background or character are less well understood by persons of different racial and cultural groups. The decision of the sentencing panel in this case is an example of this [systemic condition,]" and, therefore, "[t]he high proportion of Native Americans and African Americans on Nebraska's death row, and among those selected for execution, is a reflection of this phenomenon."

*McCleskey v. Kemp, supra,* is the leading case addressing alleged racial discrimination in imposition of the death penalty, and we apply its principles here. Under *McCleskey,* to successfully prove that a defendant's race unconstitutionally tainted his or her capital sentencing, the defendant must at a minimum establish that the decisionmaker in the case acted with a discriminatory purpose, resulting in a discriminatory effect suffered by the defendant.

Reeves' petition did not plead factual allegations which, if proved true, would show an unconstitutional deprivation of Reeves' federal equal protection rights as announced in *McCleskey* or elsewhere. To the contrary, as noted above, in his petition Reeves admitted that "it cannot be proved that these racial disparities are the result of conscious racial discrimination by any particular state actor or group of state actors."

It is clear on the face of Reeves' petition that as to his claims, based on federal equal protection grounds of racially disparate

treatment in sentencing and enforcement, he is not entitled to relief because he failed to allege facts which entitle him to relief and he further admits that he cannot establish the elements required to show a deprivation of federal equal protection principles. Reeves' petition alleges only conclusions, and such a petition may properly be denied without an evidentiary hearing. See *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999). We thus find no error in the district court's order refusing to grant Reeves postconviction relief on his federal equal protection claims without an evidentiary hearing.

2. DUE PROCESS CLAIM: ALLEGED DENIAL OF LIFE INTEREST

On appeal, Reeves claims, as he alleged in district court in his second postconviction petition, that upon remand from the U.S. Supreme Court, this court improperly resentenced him in *Reeves III*. Reeves claims generally that this court resentenced him in *Reeves III* and that in so doing, denied him the proper trial level sentencing and appellate review required under Nebraska's statutory death penalty sentencing scheme. Reeves argues, in effect, that he had a life interest in connection with his resentencing in *Reeves III* and that his challenge is, therefore, equivalent to a claim that he was denied due process in the imposition of the death penalty in *Reeves III*.

In response, the State argues that new sentences were not imposed in *Reeves III*, but, rather, *Reeves III* simply reaffirmed the death sentences imposed by the trial court which were earlier affirmed in *Reeves I* and *Reeves II*, and no appeal lies from a mere reaffirmation of existing sentences. The State asserts that Reeves' claim challenging the methodology in *Reeves III* is procedurally barred. We determine that *Reeves III* was a resentencing for *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), and Nebraska statutory purposes and that Reeves' claim is not procedurally barred. We further conclude that the methodology in resentencing Reeves in *Reeves III* denied Reeves of due process.

(a) Reeves Was Resentenced in *Reeves III*

*Reeves III* occurred as a result of the U.S. Supreme Court's order vacating this court's affirmance of the denial of Reeves' first petition for postconviction relief in *Reeves II*. Prior to

*Reeves II*, in *Reeves I* this court found sentencing errors, but upon reevaluation, this court concluded the death sentences were proper.

The full text of the U.S. Supreme Court's order stated: "Motion of petitioner for leave to proceed *in forma pauperis* granted. Certiorari granted, *judgment vacated*, and case remanded for further consideration in light of *Clemons v. Mississippi*, 494 U. S. 738 (1990)." (Emphasis supplied.) *Reeves v. Nebraska*, 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409 (1990). By its terms, the U.S. Supreme Court vacated the judgments and directed this court to consider Reeves' claim challenging the propriety of appellate sentencing in light of *Clemons*.

In its order of remand, the U.S. Supreme Court "vacated" the judgments in Reeves' prior cases. The judgment in a criminal case is the sentence. See *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995). By vacating the judgment of this court, the U.S. Supreme Court expressly invalidated Reeves' death sentences as reflected in *Reeves I* and *Reeves II*, thus requiring resentencing. Vacating a judgment renders it ineffective and incapable of enforcement. See, e.g., Black's Law Dictionary 1388 (5th ed. 1979) (defining "vacate" as "[t]o annul; to set aside; to cancel or rescind. . . . As applied to a judgment or decree it is *not* synonymous with 'suspend' which means to stay enforcement of judgment or decree" (emphasis supplied)). Accordingly, although Reeves remained convicted of two murders, the sentences imposed on him ceased to be effective or capable of enforcement upon order of the U.S. Supreme Court. Thus, upon remand, this court's action in *Reeves III* was a resentencing.

(b) Reeves' Current Postconviction Claim Based
on Nebraska Supreme Court's Failure to Comply
With Proper Sentencing Procedure in *Reeves III*
Is Not Procedurally Barred

The State argues that Reeves' claim regarding this court's resentencing in *Reeves III* is procedurally barred. We do not agree and determine that the district court erred in so concluding.

It is well settled that a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and which were or could have been litigated on direct appeal. *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999). In *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), we recently observed that generally, a defendant's failure to diligently prosecute an appeal from a denial of a prior motion for postconviction relief results in a procedural default that bars later action on the claim.

As noted above, upon remand from the U.S. Supreme Court and prior to this court's opinion in *Reeves III*, Reeves sought to clarify the methodology to be applied upon remand. In this regard, we note that Reeves requested an evidentiary hearing in connection with the resentencing upon remand, which was denied by this court. After the issuance of *Reeves III*, Reeves sought a rehearing and reconsideration, which requests were denied. Reeves thereafter filed for a writ of habeas corpus in federal court, asserting various errors resulting from the resentencing in *Reeves III*. Throughout the ensuing litigation on Reeves' habeas corpus petition, the federal courts considered this court's resentencing of Reeves in *Reeves III* and concluded in *Reeves v. Hopkins*, 76 F.3d 1424 (8th Cir. 1996), that this court had asserted its authority under state law to resentence in *Reeves III* and that because such assertion was a determination of state law, it was beyond the bounds of the federal courts' authority to reject this court's interpretation of Nebraska state law. *Id.* The U.S. Court of Appeals for the Eighth Circuit specifically noted that by virtue of its conclusion it "in no way intend[ed] to imply that the Nebraska Supreme Court could not . . . reconsider its somewhat cryptic assertion of authority [to resentence in *Reeves III*]." 76 F.3d at 1429 n.7. Therefore, the precise issue of whether this court properly complied with state law pertaining to sentencing in homicides in performing the resentencing in *Reeves III* has not yet been considered by an appellate court with the authority to determine this question of state law.

The instant petition for postconviction relief cannot be deemed an invalid attempt to substitute postconviction relief for that which Reeves could have obtained in a direct or prior

appeal, nor is it an attempt to relitigate a question which has already been finally decided. Obviously, because the claimed errors in *Reeves III* occurred after direct appeal, Reeves could not have complained on direct appeal. The claimed errors in *Reeves III* were pursued following *Reeves III* and were embodied in the continuation of that postconviction case turned federal habeas corpus action until the U.S. Supreme Court had concluded *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998). In this connection, we observe that because Reeves' claim that his life interest was violated and that he was denied due process in connection with imposition of the death penalty in violation of his 14th Amendment rights in *Reeves III*, there is a basis to conclude that Reeves could have obtained relief in these continued federal proceedings, thus excusing Reeves from initiating a second postconviction action in state court prior to the decision in *Hopkins v. Reeves, supra.* See, *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 118 S. Ct. 1244, 140 L. Ed. 2d 387 (1998); *Lankford v. Idaho*, 500 U.S. 110, 111 S. Ct. 1723, 114 L. Ed. 2d 173 (1991); *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). Throughout the history of Reeves' federal litigation following this court's decision in *Reeves III* about which he complains, it cannot be said that Reeves failed to diligently pursue his claim. See *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

After the conclusion of his federal habeas corpus claim in the U.S. Supreme Court in *Hopkins v. Reeves, supra*, in the summer of 1998, which action stemmed from his first postconviction case and procedurally included the *Reeves III* decision and the subsequent challenges thereto, Reeves filed his second petition for postconviction relief in the district court for Lancaster County in December 1998. Although the instant appeal stems from Reeves' second petition for postconviction relief, it is the first postconviction proceeding initiated after the *Reeves III* decision. On these facts, we conclude that Reeves is not procedurally barred from raising his claim regarding the alleged improper resentencing in *Reeves III* in the instant postconviction case. The district court's ruling to the contrary was error. We thus proceed to the merits of Reeves' due process claim.

### (c) Due Process Claim Based on Improper Resentencing in *Reeves III*

Reeves had a life interest in connection with the imposition of the death penalty in *Reeves III* and was entitled to due process in the imposition of the sentence therein. See, *Ohio Adult Parole Authority v. Woodard, supra* (holding that death penalty inmate's due process rights were not violated in clemency proceedings with majority of justices in their opinions basing due process analysis on life interest under 14th Amendment); *Lankford v. Idaho,* 500 U.S. at 111 n.1. (holding that sentencing process in capital case must satisfy requirements of due process clause of 14th Amendment which provides, " 'No State shall . . . deprive any person of life . . . without due process of law' "); *Gardner v. Florida, supra* (holding that capital sentencing procedure must satisfy constitutional command that no person shall be deprived of life without due process of law). The underlying constitutional principle embodied in the Nebraska death penalty statutes on which Reeves relies, §§ 29-2519 to 29-2546, is that given the life interest at stake, the death penalty shall not be imposed without due process. *Ohio Adult Parole Authority v. Woodard, supra*; *Lankford v. Idaho, supra*; *Gardner v. Florida, supra*. Thus, our evaluation of Reeves' claim is a due process analysis.

Reeves argues, in effect, that he was denied due process when this court resentenced him to death in *Reeves III*. In particular, Reeves claims this court's resentencing in *Reeves III* denied him the trial level sentencing required by state law. Because of the life interest at stake, Reeves was denied due process if he was resentenced in violation of the sentencing procedures required by state law. Accordingly, we analyze this court's authority under state law to resentence Reeves in *Reeves III*.

In *Reeves III*, this court asserted its authority under state law to resentence Reeves. The doctrine of stare decisis would ordinarily bind us to follow such decision. However, we have observed:

> " 'The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to, *unless* the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and

mischievous or unless more harm than good will result from doing so.' "
(Emphasis supplied.) *State v. Burlison*, 255 Neb. 190, 195, 583 N.W.2d 31, 36 (1998) (quoting *Muller v. Nebraska Methodist Hospital*, 160 Neb. 279, 70 N.W.2d 86 (1955), *overruled in part, Myers v. Drozda*, 180 Neb. 183, 141 N.W.2d 852 (1966)). As we further explain below, we conclude that this court's assertion of authority under state law to resentence in *Reeves III* was clearly erroneous. Because of the life interest and due process rights at stake, it would do more harm than good to adhere to this court's clearly erroneous decision in *Reeves III*.

A review of the Nebraska statutory scheme regarding the state's Special Procedure in Cases of Homicide, §§ 29-2519 to 29-2546, shows that this court (1) lacked the necessary statutory authority under state law to resentence Reeves in *Reeves III* and (2) acted as an unreviewable sentencing panel in violation of state law, thus denying Reeves his right to due process. This court resentenced Reeves in *Reeves III* pursuant to the mandate of the U.S. Supreme Court in *Reeves v. Nebraska*, 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409 (1990), in which the U.S. Supreme Court stated, "judgment vacated, and case remanded for further consideration in light of *Clemons v. Mississippi*, 494 U. S. 738 (1990)." *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), made clear that when an aggravating circumstance has been found invalid, a state appellate court may reweigh the aggravating and mitigating circumstances or undertake a harmless error analysis without offending *federal* constitutional principles. However, under *Clemons* there must be authority under *state law* for an appellate court to take such action.

Some state appellate courts, including the Mississippi Supreme Court on remand from *Clemons*, have concluded that their respective state laws do not provide them with authority to carry out reweighing and resentencing. Under such circumstances, these courts have found they must remand to their state trial courts for resentencing. See, e.g., *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993) (declining to reweigh and resentence with indication that to do so would be contrary to state law); *People v. Shaw*, 186 Ill. 2d 301, 713 N.E.2d 1161, 239 Ill. Dec.

311 (1999) (state law does not allow for appellate resentencing without offending 14th Amendment due process rights); *Stringer v. State*, 638 So. 2d 1285 (Miss. 1994); *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992); *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) (holding that remand to trial court for jury determination for resentencing was necessary due to lack of authority for appellate court to resentence under state law; superseded by statute as stated in *Cole v. State*, 666 So. 2d 767 (1995)).

When this court resentenced Reeves to death in *Reeves III*, this court did not state the source of such authority under state law to do so. Rather, this court simply cited *Clemons v. Mississippi*, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), as the basis of such authority and did not discuss the implications of state law. Although this court again stated in *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993), and *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), that this court had authority to resentence, this court merely cited *Reeves III* and *Clemons* without analysis as to the source of such authority. That approach was clearly erroneous because it misinterpreted *Clemons* as providing the only authority necessary in order for a state appellate court to resentence. *Clemons* held that reweighing and resentencing would not offend federal constitutional principles. However, whether there was state statutory authority for a state appellate court to resentence was not analyzed by the U.S. Supreme Court because that determination was a matter of state law.

As a general matter, this court, except in those cases wherein original jurisdiction is specially conferred by Neb. Const. art. V, § 2, exercises appellate jurisdiction, and such appellate jurisdiction can be conferred only in the manner provided by statute. *Larson v. Wegner*, 120 Neb. 449, 233 N.W. 253 (1930). Further, the Nebraska Constitution places original sentencing authority in the district courts and does not provide sentencing as one of this court's powers. Compare Neb. Const. art. V, §§ 2 and 9.

The Nebraska statutory sections pertaining to the state's Special Procedure in Cases of Homicide provide specific instructions for the manner in which sentencing determinations

are to be made in cases involving the possible imposition of a death sentence. These statutes create a two-tier sentencing process and differentiate between the role performed by the district court judge or a three-judge district court panel in sentencing as compared to the role of this court in reviewing that sentence. See §§ 29-2519 to 29-2546. The statutes are specific regarding the sentencing procedures, and nowhere do they give this court authority to resentence when we have found error on the part of the sentencing court that is not minor and not harmless.

Section 29-2520 states that sentencing determinations following a conviction for first degree murder are to be made by the judge who presided over the trial or who accepted the guilty plea or by a three-judge panel that includes the trial judge. The decision of whether to convene a three-judge panel is left to the discretion of the district court trial judge. *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), *cert. denied* 498 U.S. 881, 111 S. Ct. 216, 112 L. Ed. 2d 176 (1990). Section 29-2520(3) further provides that where the presiding judge is disabled or disqualified, the Chief Justice of the Nebraska Supreme Court shall name a panel of three district court judges to determine the sentence to be imposed.

Section 29-2522 provides as follows:

After hearing all of the evidence and arguments in the sentencing proceeding, the judge or judges shall fix the sentence at either death or life imprisonment, but such determination shall be based upon the following considerations:

(1) Whether sufficient aggravating circumstances exist to justify imposition of a sentence of death;

(2) Whether sufficient mitigating circumstances exist which approach or exceed the weight given to the aggravating circumstances; or

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

In each case in which the court imposes the death sentence, the determination of the court shall be in writing and shall be supported by written findings of fact based upon the records of the trial and the sentencing proceeding, and

referring to the aggravating and mitigating circumstances involved in its determination.

If an order is entered sentencing the defendant to death, a date for execution shall not be fixed until after the conclusion of the appeal provided for by section 29-2525.

It should be noted that the statutory section pertaining to sentencing procedures in homicide cases utilizes the term "judge or judges" when referring to the sentencing judge or three-judge panel at the district court level and "The Supreme Court" when referring to this court. See §§ 29-2521.02 to 29-2521.04 and 29-2528 (regarding duties of "the Supreme Court"). Thus, the statutory sections regarding the weighing of aggravating and mitigating circumstances and the determination of the sentence specifically place that role in the district court, with the judge who presided at trial included in the sentencing determination except where he or she is disabled or disqualified as provided for in § 29-2520(3), in which case a three-judge district court panel shall determine the sentence. There is no similar provision in the statutes authorizing sentencing by this court. The Nebraska Legislature did not authorize this court to perform the same function as the sentencing judge or sentencing panel.

Further, the statutory sections pertaining to appellate review of death sentences provide this court with only the power to reduce a sentence of death to one of life imprisonment. See §§ 29-2521.03 and 29-2524. Thus, the powers of this court are limited. Section 29-2528 specifically provides that "[i]n all cases when the death penalty has been imposed by the district court, the Supreme Court shall, after consideration of the appeal, order the prisoner to be discharged, a new trial to be had, or appoint a day certain for the execution of the sentence." Nothing in the Nebraska statutory scheme provides this court with the power to resentence a criminal defendant to death in a homicide case when we have found a reversible error in the sentencing proceedings conducted at the district court level. Rather, the only statute in which the Legislature has authorized any court to impose a death sentence is § 29-2520, which specifically states that the trial judge or a panel of district court judges makes such a determination.

In *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1993), *cert. denied* 508 U.S. 967, 113 S. Ct. 2950, 124 L. Ed. 2d 697, the district court sentencing panel found the existence of aggravating circumstances by a standard of proof of less than beyond a reasonable doubt. This court then reweighed the proof and determined that each circumstance was proved beyond a reasonable doubt. Thus, this court reinstated the death sentence in that case. The U.S. Court of Appeals for the Eighth Circuit reversed on the basis that Rust had a statutory right to (1) have his trial judge or a three-judge panel consider whether aggravating facts were proved beyond a reasonable doubt and to be sentenced based on those findings and (2) have the determination of that sentencing judge or panel reviewed by the Nebraska Supreme Court. The Eighth Circuit stated that "[w]hile created by state law, these are not 'procedural right[s] of exclusively state concern,' they are liberty interests protected by the Fourteenth Amendment." *Id.* at 1493. The Eighth Circuit further stated that "[t]he whole point of the two-tier sentencing procedure is that the initial determination is reviewed by an independent appellate court. The two-tier process would be subverted if the Nebraska Supreme Court could step in and fully perform the work of the sentencing panel." *Id.* Following *Rust*, this court determined in ·*State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993), that this court would no longer engage in appellate reweighing, noting that any such reweighing would likely be reversible. See, also, *State v. Ryan*, 248 Neb. 405, 452, 534 N.W.2d 766, 796 (1995) (recognizing Eighth Circuit's holding that "appellate reweighing violates a defendant's right to due process under Nebraska's death penalty sentencing statutes").

Although factually different, we find the analysis in *Rust v. Hopkins, supra,* to be relevant to this case. In *Rust*, the U.S. Court of Appeals for the Eighth Circuit noted the importance of the two-tier sentencing scheme in Nebraska. In the instant case, significant error occurred at the first tier where Reeves' sentencing panel, inter alia, failed to consider intoxication as a mitigating factor in the deaths of both Lamm and Mesner. In *Reeves III*, this court specifically stated:

> We are unable to determine that the weighing analysis in the minds of the three-judge panel would have been the

same if [intoxication] had been factored into the balance. We do not know what weight the judges may have given this circumstance if they had found it to exist.

239 Neb. at 428, 476 N.W.2d at 837. Notwithstanding this observation, instead of remanding in order to allow the three-judge panel to consider the intoxication factor, this court made its own determination. Thus, this court was not acting in *Reeves III* in a manner that would merely cure a minor sentencing error; rather, as the comments in *Reeves III* illustrate, this court stepped into the sentencing panel's shoes by considering and weighing a factor that the panel had not considered. When this court determined in *Reeves III* that the error involved was not harmless beyond a reasonable doubt and then resentenced Reeves based on factors not considered by the sentencing panel, this court acted as an independent and unreviewable sentencing panel. This action deprived Reeves of a proper sentencing procedure before the district court, thus committing an error comparable to that which led to a reversal in *Rust v. Hopkins*, 984 F.2d 1486 (8th Cir. 1993), *cert. denied* 508 U.S. 967, 113 S. Ct. 2950, 124 L. Ed. 2d 697. This court's action in *Reeves III* effectively deprived Reeves of the entire first tier of the sentencing procedures set forth by the Legislature in §§ 29-2520, 29-2521, and 29-2522, and further deprived him of the second tier of appellate review set forth in §§ 29-2521.02 and 29-2521.03.

■ Not only is it contrary to the Nebraska statutory sentencing scheme for this court to resentence in homicide cases, it is the better rule that this court refrain from resentencing in homicide cases. As the Supreme Court of Arizona, en banc, has stated:

In any capital case where additional evidence is to be received, remand is required. "[W]e perform as an appellate court, not as a trial court.". . .

Some cases will not require submission of additional evidence but only the reweighing and balancing of the evidence. Many of these cases will involve situations in which the trial judge erred with respect to aggravating or mitigating circumstances and in which there is mitigating evidence of some weight. In these cases too, remand for resentencing is the better rule. As the United States

Supreme Court noted, we have an appellate task in review-
ing death sentences and have placed the sentencing author-
ity in all criminal cases, and especially capital cases, with
the trial judge. . . . "Law and policy would indicate that the
trial judge should again make the [sentencing] determina-
tion." . . . There are important reasons for this procedu-
ral rule.

First, this court's jurisdiction is appellate. . . . We have
very limited original jurisdiction. . . .

On appeal, in many cases it is simply impossible to
determine how the trial judge—who heard the evidence
and saw the witnesses—evaluated and weighed that evi-
dence and testimony. Without these imperative determina-
tions, the aggravating and mitigating factors cannot be
balanced. . . .

Even if this court could somehow recreate the many
valuable intangibles accompanying live testimony, the
practicalities of our docket do not allow us to do so. . . .

. . . Other than the defendant and the attorneys, the trial
judge—the one individual who received every single
exhibit and heard every word uttered in court—is by far a
better tool of justice to determine the appropriate
sentence. . . .

. . . .

Finally, as is often said, the death sentence is different
from any other criminal penalty. . . . No system based on
human judgment is infallible. Thus, with the death penalty,
we have taken, and should continue to take, the extra
step—indeed walk the extra mile—to ensure fairness and
accuracy in criminal cases. In light of the trial judge's
unique familiarity with the facts of the case, remand is an
extra step that should be taken . . . .

*State v. Bible*, 175 Ariz. 549, 608-09, 858 P.2d 1152, 1211-12
(1993). Similar to the Arizona statutes, § 29-2520 provides for
the trial judge to be involved in the sentencing process, whether
alone or as part of a sentencing panel, as long as the trial judge
is not disabled or disqualified. The Arizona Supreme Court
noted that such a directive "certainly reflects a legislative desire
that, when possible, the same judge who personally saw and

heard all of the evidence must evaluate and weigh that evidence for sentencing." 175 Ariz. at 608, 858 P.2d at 1211. As in the Arizona system, not only does this court lack statutory authority to engage in resentencing in cases involving a death sentence, we are also not the best equipped court to do so. Our state statutory scheme recognizes this.

In summary, Reeves had a state statutory right to be sentenced by his trial judge or by a panel of three district judges and then had a right to have that sentence reviewed by this court. When this court resentenced Reeves in *Reeves III*, this court did so in contravention of state law. Given the life interest involved, such erroneous resentencing in *Reeves III* denied Reeves of due process. In *Reeves III*, this court acted as an unreviewable sentencing panel in violation of state law. *Reeves III* is therefore overruled to the extent it held that state law authorized this court to resentence a defendant in a homicide case, because such holding was clearly erroneous. To the extent *State v. Moore*, 250 Neb. 805, 553 N.W.2d 120 (1996), and *State v. Moore*, 243 Neb. 679, 502 N.W.2d 227 (1993), endorsed such conclusion found in *Reeves III*, they are disapproved. This court's resentencing in *Reeves III* denied Reeves of his due process right to the separate and distinct sentencing and review procedures set forth in the state statutes. Accordingly, the proper action of this court is to vacate Reeves' sentences and remand the cause to the proper sentencing authority, the district court, for resentencing.

### 3. CRUEL AND UNUSUAL PUNISHMENT

In his petition, Reeves sought to have his death sentences vacated on the basis that enforcement of the death penalty by electrocution constitutes cruel and unusual punishment under the Eighth Amendment and Neb. Const. art. I, § 9. The trial court rejected this argument. Because we have determined that Reeves' sentences must be vacated and the cause remanded for resentencing, we need not consider this assignment of error.

## VI. CONCLUSION

Reeves was convicted of two counts of felony murder and sentenced to death. The district court denied him relief on his second postconviction petition from which denial this appeal is

taken. As set forth above in this opinion, Reeves remains convicted of two counts of felony murder; however, with respect to the sentence of death, we reverse the order of the district court, vacate the sentences of death, and remand the cause for resentencing.

In this appeal from the denial of postconviction relief, we determine that the district court correctly concluded that the equal protection amendment to Neb. Const. art. I, § 3, cannot be applied retroactively and that Reeves was not entitled to relief based on this amendment to the Nebraska Constitution. However, we conclude that in a properly pleaded death penalty case, the equal protection amendment to Neb. Const. art. I, § 3, can be applied prospectively to a claim pertaining to the enforcement of the death penalty. The district court properly rejected Reeves' equal protection claim based on federal grounds. The district court's conclusion that Reeves' claims were procedurally barred was error. Reeves' claim that he was denied due process due to this court's violation of his life interest in the proper application of the statutory procedures required in imposing the death penalty is well founded.

We conclude as a matter of law that this court lacked the authority to resentence Reeves to death in 1991 in *Reeves III* upon remand from the U.S. Supreme Court. The Nebraska statutory sentencing scheme in capital cases provides for two tiers, the first tier being a sentence imposed by the district court trial judge who heard the evidence or by a three-judge district court panel, to be followed by a second tier which is appellate review by this court. The resentencing of Reeves to death by this court in *Reeves III* deprived him of the two-tier statutory sentencing structure, resulting in an unconstitutional denial of the process to which Reeves was due in the imposition of a death sentence. The death sentences imposed upon Reeves for both counts of which he remains convicted are vacated. We remand this cause to the trial court for resentencing in accordance with §§ 29-2519 to 29-2546.

REVERSED, SENTENCES VACATED, AND
CAUSE REMANDED FOR RESENTENCING.